OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Should defendant be sentenced as a second felony offender when the first crime — which was a felony at the time of his first sentencing — has been reclassified as a misdemeanor by the time of his second felony offender sentencing? The Appellate Division answered this question in the affirmative, as do we.
 

 In February 1984, in Monroe County, defendant was sentenced following a conviction for grand larceny, third degree, a class E felony, then defined as a theft of property valued in excess of $250 (Penal Law former § 155.30 [1]). The conviction was based on theft of a radio worth more than $250 but less than $1,000. Effective November 1, 1986, the statute was amended to increase the minimum value to $1,000, and renamed grand larceny, fourth degree (L 1986, ch 515, § 1). After the 1986 amendments, a theft of property below $1,000, in the absence of aggravating factors, became petit larceny, a class A misdemeanor (Penal Law § 155.25).
 

 In November 1990 defendant was indicted on felony drug possession charges and later found guilty after trial. The People sought to have him sentenced as a second felony offender
 
 (see,
 
 Penal Law § 70.06), but the trial court declined, reasoning that the conduct for which he was sentenced as a felon in 1984 would constitute only a misdemeanor under existing law. On the People’s appeal, the Appellate Division reversed and remitted for resentencing as a second felony offender, concluding that defendant should not have the benefit of the 1986 amendments because his conviction was final before their effective date. A Judge of this Court granted defendant leave to appeal, and we now affirm.
 

 
 *664
 
 To qualify as a predicate felony offense for purposes of sentence enhancement, a prior "conviction must have been in this state of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized and is authorized in this state irrespective of whether such sentence was imposed” (Penal Law § 70.06 [1] [b] [i]). Defendant urges that his 1984 conviction should not be considered a felony for present purposes because of (1) the language of the second felony offender statute, read with the definition of felony, (2) the doctrine of amelioration, and (3) equal protection principles. We disagree.
 

 Statutory Language and History
 

 Penal Law § 10.00 (5) defines felony as "an offense for which a sentence to a term of imprisonment in excess of one year may be imposed.” Under Penal Law § 70.06 (1) (b) (i), for a prior in-State conviction to constitute a predicate felony conviction, "[t]he conviction must have been in this state of a felony.” Defendant would weave these two statutes together to read that a predicate felony conviction "must have been in this state of an offense for which a sentence to a term of imprisonment in excess of one year may be imposed.”
 

 Placing great emphasis on the verb "may,” defendant would have us hold that a prior in-State felony conviction may be deemed a predicate felony conviction for purposes of second felony offender determination only if the prior felony was for an act that is, at the time of second felony offender sentencing, punishable in New York by a term of imprisonment in excess of one year. Defendant’s argument for this strained construction of a provision clear on its face is unpersuasive.
 

 Penal Law § 10.00 (5) is part of the generally applicable definition section of the Penal Law in which 18 terms are defined, all in the present tense, as is standard dictionary practice in defining words. There is no evidence that the Legislature’s use of the present tense here is anything more than an example of this practice.
 

 It is a rule of construction that in the event of an apparent conflict between parts of a statutory scheme the specific overrides the general, and a word’s broad meaning may be restricted by other parts of the statute to which it relates
 
 (see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 113, at 235-238). Penal Law § 70.06 (1), defining "second felony offender,”
 
 *665
 
 is specifically applicable to the second felony offender statute at issue. There is no indication that the Legislature intended the general definition of "felony” to be incorporated into the specific definition of "second felony offender” in a manner that would contradict its plain meaning. On the contrary, a close reading of section 70.06 (1) indicates that the Legislature had no such intent.
 

 The second felony offender statute of necessity addresses past events — previous criminal acts. The statute’s goal is to deter recidivism by enhancing the punishments of those who, having been convicted of felonies, violate the norms of civil society and commit felonies again. A retrospectivity, inherent in such a goal, is evident in the language of the statute: to be deemed a predicate felony conviction "[t]he conviction
 
 must have been
 
 in this state of a felony” (Penal Law § 70.06 [1] [b] [i] [emphasis added]). The Legislature’s definition in the second felony offender statute signals its intent to look to the time of the prior crime — and the law at that time — when considering whether the prior crime is a predicate felony for second felony offender purposes.
 

 If the Legislature intended that prior in-State crimes be evaluated for second felony offender purposes in relation to the law at the time of the subsequent crime, it could have said so explicitly, as it did with respect to out-of-State crimes. To be considered a predicate felony conviction, a conviction in any jurisdiction other than New York State must have been "of an offense for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized
 
 and is authorized
 
 in this state” (§ 70.06 [1] [b] [i] [emphasis added]). The contrast in language makes the legislative intent all the more plain.
 

 Defendant’s reading of the legislative history is no more persuasive. When first passed in 1973, the statute did not include the phrase "and is authorized in this state” regarding out-of-State felonies (L 1973, ch 277, §9). Thus, a crime committed in a jurisdiction other than New York and punishable in that jurisdiction by death or imprisonment in excess of one year was deemed a predicate felony conviction in New York for purposes of second felony offender sentencing, even if the criminal act committed in the other jurisdiction was punishable by less than one year in prison under the Penal Law.
 

 The statute was criticized as unduly harsh in instances
 
 *666
 
 where another State’s felony laws were substantially more severe than ours
 
 (People v Pacheco,
 
 53 NY2d 663, 668 [Cooke, Ch. J., concurring]), and as possibly violative of equal protection principles
 
 (see,
 
 1975 NY Legis Ann, at 64 [Mem of Assemblyman Arthur Eve]). Responding to these concerns, in 1975 the Legislature added the phrase "and is authorized in this state” to section 70.06 (1) (b) (i) (L 1975, ch 784, § 1) to remove this " 'purely arbitrary’ harshness * * * and to take what has been characterized as a 'fairer and more logical approach’ ”
 
 (Pacheco,
 
 53 NY2d, at 668).
 
 *
 

 Where a statute is plain on its face, we need only apply it in accordance with its meaning. Given that the phrase "and is authorized in this state” was made applicable only to crimes committed in other jurisdictions, reclassification of an act from a felony to a misdemeanor would benefit only defendants whose previous felonies were committed in other jurisdictions. The Legislature could have avoided the distinction — and, of course, still can — by making the 1975 language generally applicable, but it instead left an unambiguous distinction in the statute which we are not free to ignore.
 

 Ameliorative Nature of the Amendment
 

 Defendant next argues that the 1986 amendment was ameliorative in nature, and should therefore be applied to the 1984 conviction.
 

 When, between the time a person commits a criminal act and the time of sentencing, a criminal statute is repealed or a penalty reduced because of a changed view regarding the gravity of the crime, the amelioration doctrine dictates that the punishment standard at the time of sentencing should guide the sentence
 
 (People v Oliver,
 
 1 NY2d 152). The doctrine is rooted in the view that where a reduction in the penalty for a crime indicates a legislative judgment that the lesser penalty adequately meets all the legitimate ends of the criminal law, imposing a harsher penalty would be an exercise in vengeance, which the law does not permit
 
 (Oliver,
 
 1 NY2d, at 160).
 

 We previously have recognized that the 1986 amendment to
 
 *667
 
 Penal Law § 155.30 (1) — the preamendment version of which was the basis for defendant’s 1984 conviction and sentence — is ameliorative in nature
 
 (People v Behlog,
 
 74 NY2d 237). Defendant argues that the principles of
 
 Oliver,
 
 as applied in
 
 Behlog,
 
 require us now to evaluate his 1984 felony conviction by the standards of the 1986 amendment for second felony offender purposes. This argument misapprehends the amelioration doctrine.
 

 Absent a constitutional violation, the validity and effect of a final judgment of conviction — which includes sentencing— are properly evaluated under "the law existing at the time the conviction was obtained or by subsequent law applicable to the judgment under principles of retroactivity”
 
 (People v Catalanotte,
 
 72 NY2d 641, 644-645). When, prior to sentencing, the Legislature makes a judgment that the crime a defendant has committed warrants a lesser punishment, the defendant may be punished in accordance with the new standards because they represent society’s most up-to-date evaluation of the nature of his offense. However, the doctrine does not require reconsideration of final judgments under statutes that are later amended. Defendants whose cases are complete prior to the effective date of an ameliorative amendment have been properly evaluated under the standards of the criminal law in effect at the time of the proceedings against them
 
 (Oliver,
 
 1 NY2d, at 163).
 

 Defendant argues that his appearance before the court for sentencing as a second felony offender, after the 1986 amendment, revived his 1984 felony conviction for reconsideration by the court, thereby subjecting it to amelioration
 
 (see, Oliver,
 
 1 NY2d, at 160). This is not so.
 

 When a defendant is sentenced as a second felony offender, the initial felony case is not reopened, nor is defendant punished
 
 again
 
 for his initial crime. The initial case is, and remains, complete. Rather, the defendant is punished
 
 more
 
 for the second felony — solely the second felony — because recidivism evidences a lack of rehabilitation and a greater danger to society. As we have noted, "a sentence as a multiple offender 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one’ ”
 
 (People v Morse,
 
 62 NY2d 205, 217-218;
 
 see also, People v Parker,
 
 41 NY2d, at 26).
 

 
 *668
 
 Defendant’s sentencing as a second felony offender did not entail reevaluation of his initial conviction, nor is reevaluation warranted by the amelioration doctrine.
 

 Equal Protection Principles
 

 Defendant argues, finally, that his construction of the second felony offender statute is necessary to avoid an equal protection violation that would otherwise result from the disparate treatment of in-State and out-of-State felonies under Penal Law § 70.06 (1) (b) (i). While the statute does indeed treat these categories differently, there is no equal protection violation under the State or Federal Constitution.
 

 "The equal protection clause does not mandate absolute equality of treatment but merely prescribes that, absent a fundamental interest or suspect classification, a legislative classification be rationally related to a legitimate State purpose”
 
 (People v Parker,
 
 41 NY2d 21, 25). As there is neither a suspect class nor a fundamental right at issue here, the statute need only be supported by some rational basis to survive constitutional scrutiny.
 

 In applying the rational basis test, we defer to the Legislature, which is presumed to know all facts that would support a statute’s constitutionality — a presumption which must be rebutted beyond a reasonable doubt. The Legislature’s actual purpose need not be apparent, for a statute is constitutional if rationally related to any conceivable legitimate State purpose
 
 (see, Maresca v Cuomo,
 
 64 NY2d 242, 250-251).
 

 An equal protection challenge to Penal Law § 70.06 (1) (b) (i), based on the same statutory categories raised by defendant here, came before this Court in 1981
 
 (People v Pacheco,
 
 53 NY2d 663). While the majority in
 
 Pacheco
 
 did not address the equal protection claim, because defendant lacked standing to raise it, three Judges in concurrence would have reached the merits and upheld the statute under both the State and Federal Constitutions
 
 (Pacheco,
 
 53 NY2d, at 669-670). As the concurrence explained, New York has a legitimate interest in upholding the State’s Penal Law, and in furtherance of this interest it was not irrational for the Legislature to punish those who repeatedly violate New York’s criminal laws more harshly than those who have violated
 
 our
 
 laws but once. We find this reasoning persuasive, and the distinction drawn by section 70.06 (1) (b) (i) therefore rationally related to the
 
 *669
 
 legitimate State purpose of enforcing New York’s criminal laws.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Simons, Titone, Hancock, Jr., Bellacosa and Smith concur; Judge Levine taking no part.
 

 Order affirmed.
 

 *
 

 In 1976, shortly after passage of the amendment, this Court upheld the preamendment second felony offender statute as not violative of the Equal Protection Clause of the State or Federal Constitution
 
 (People v Parker,
 
 41 NY2d 21).