832 So.2d 977 (2002)
STATE of Louisiana, Plaintiff-Appellee,
v.
Carlos Dewayne WADE, Defendant-Appellant.
No. 36,295-KA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
*980 Peggy J. Sullivan, Monroe, Carlos Dewayne Wade, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Edward M. Brossette, Assistant District Attorney, for Appellee.
Before CARAWAY, DREW and HARRISON (Pro Tempore), JJ.
HARRISON, Judge Pro Tempore.
The defendant, Carlos Dewayne Wade, was found guilty of possession of a Schedule II controlled dangerous substance, cocaine, with the intent to distribute, La. *981 R.S. 40:967 A(1), and of flight from an officer, La. R.S. 14:108.1 A. He was then adjudicated a third felony offender and sentenced to the mandatory life at hard labor without benefit of parole, probation or suspension of sentence, as provided by La. R.S. 15:529.1 A(1)(b)(ii) at the time of the offense. Wade now appeals, raising five assignments of error. We affirm.

Factual background
Shortly before 1:00 a.m. on July 7, 2000, Officer J.T. Redstone of the Shreveport Police Department was on tactical patrol on Youree Drive. He saw a white Lincoln Continental speeding north on Youree, going well over the posted 50 mph limit. Redstone turned around and followed the Lincoln, which made a right on East 70th St. and headed east. Redstone was joined by officers W.W. Lindsey and Robert Morman, all of whom activated their lights and sirens; on East 70th, Redstone paced the Lincoln at 70 mph. The Lincoln did not stop, but crossed the Jimmy Davis bridge into Bossier Parish and turned south on U.S. Hwy. 71. All three officers saw the Lincoln pass a car on the bridge, cross the double yellow center line on Hwy. 71 several times, and force other vehicles off the road. After eight to 12 minutes of chase, the Lincoln pulled off the side of Hwy. 71. Officer Redstone removed the driver, Wade, from the car, advised him of his rights and handcuffed him. The entire chase was captured on videotape by cameras mounted in Redstone and Morman's police cars.
Officer Redstone turned away to secure the Lincoln, which was rolling into the ditch. He was unable to stop the car. Meanwhile, Officer Lindsey patted down Wade and found in his front pocket a clear plastic Ziplok Baggie. This contained seven smaller green baggies, each of which held a large white rock that appeared to be crack cocaine. The officers could not recall if there was also a cell phone, pager or any cash on Wade's person.
The substance field-tested positive for cocaine. Laboratory analysis confirmed that the substance was cocaine; a forensic chemist testified that the baggies and their contents weighed 9.2 grams. Agent Michael Tong, supervisor for the midlevel narcotics unit, testified as an expert in the street level interdiction of cocaine. He explained that the difference between a user of crack cocaine and a distributor is the amount seized, and other paraphernalia. On the street level, crack is usually sold in "dime bags" that contain 0.10 g and sell for $10; the crack seized from Wade appeared to be packaged in $100 bags of about 1 g each, and worth about $1,000 total. He said this was "not a personal use amount of cocaine," but would normally be cut into $10 rocks for distribution. Agent Tong further testified that the recent trend is for dealers to keep their money away from their cocaine, but he agreed that most dealers carry a cell phone or pager, and a weapon. He added that a user would normally be carrying a crack pipe.
The State charged Wade with possession of a Schedule II CDS, cocaine, with intent to distribute, and with aggravated flight from an officer. Wade filed a motion to suppress the evidence seized as a result of the stop; this was denied, and the ruling is not challenged on appeal. The matter proceeded to trial in late August 2001. During jury selection, the State raised a "reverse Batson" claim, urging that Wade had used his peremptory challenges to strike only white prospective jurors from the panel. The District Court found that the State made a prima facie case of discrimination and that Wade failed to provide race-neutral reasons for striking two of the jurors. Those two served on the jury.
*982 At trial, the State's witnesses testified as to the facts and expert opinions outlined above. The defense presented no evidence. The jury found Wade guilty as charged of possession of a Schedule II CDS, cocaine, with intent to distribute, and of flight from an officer.
The State then filed a habitual offender bill, charging Wade as a fourth felony offender. The bill listed Wade's guilty pleas to possession of a firearm by a convicted felon in 1992, armed robbery in 1995, and possession of a Schedule II CDS in 1999. At the hearing, the State noted that R.S. 15:529.1 had been amended in June 2001, but urged the court to apply the version in effect at the time of the offense. The State offered the bills of information and minutes for the 1995 and 1999 convictions; an expert testified that the fingerprints in those records were Wade's. The court adjudicated Wade a third felony offender.
At sentencing in December 2001, the court ruled that it would apply the version of the habitual offender statute in effect at the time of the offense. The court therefore imposed the mandatory life sentence at hard labor, without benefit of probation, parole or suspension of sentence. Wade filed a motion to reconsider, urging that he should receive the benefit of the more lenient version of R.S. 15:529.1 enacted in 2001. The court denied the motion, and this appeal followed.

Discussion: Sufficiency of the evidence
By his first assignment of error, Wade urges that the evidence was insufficient to convict him of possession of cocaine with the intent to distribute. He contends that applying the factors of State v. Hearold, 603 So.2d 731 (La.1992), a rational jury could find him guilty of only simple possession. The State maintains that the quantity of cocaine and the manner of packaging proves the intent to distribute beyond a reasonable doubt.
When issues are raised on appeal both as to the sufficiency of the evidence and other trial error, the reviewing court first determines the sufficiency of the evidence. This is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all elements of the offense were proved beyond a reasonable doubt. State v. Hearold, supra; State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard applies in cases involving both direct and circumstantial evidence. An appellate court reviewing the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the State. When the direct evidence is thus viewed, the facts established by the direct evidence and those inferred from the circumstances must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied 98-2723 (La.2/5/99), 737 So.2d 747.
Appellate review for sufficiency does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2 Cir. 1984). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27. Absent internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the *983 trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2 Cir. 5/8/96), 674 So.2d 1018, writ denied 98-0282 (La.6/26/98), 719 So.2d 1048.
To support the conviction for possession of CDS with the intent to distribute, the State must prove that the defendant knowingly and intentionally possessed the CDS and did so with the intent to distribute it. La. R.S. 40:967 A(1); State v. Smith, 94-1502 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078. Specific intent may be established by circumstances which give rise to a reasonable inference of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981). Factors useful in this determination include whether the defendant ever distributed or attempted to distribute the drug, whether the drug was in a form usually associated with possession for distribution to others, whether the amount of the drug created an inference of intent to distribute, whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only, and whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. Hearold, supra; State v. House, 325 So.2d 222 (La.1975). Of course, quantity alone may be sufficient to establish the intent to distribute. State v. Hearold, supra; State v. Ratliff, 35,144 (La.App. 2 Cir. 9/26/01), 796 So.2d 101.
As noted, Wade was carrying in his front pocket seven individually wrapped rocks of crack cocaine with a total weight of 9.2 g. Agent Tong, an expert in street level interdiction, testified that this was not a "personal use amount," and explained each $100 rock would likely be divided into dime bags. This testimony alone is sufficient to prove intent to distribute. Wade seeks to minimize Agent Tong's testimony but offered no reason, at trial or on appeal, to reject his opinion. Wade also argues that no money, weapon, phone or pager was found on his person, and that the officers never had any reason to suspect him of drug dealing. Of course, Agent Tong stated that some dealers keep their cash away from their drugs, and that no money would be present if Wade had not yet made any sales. Agent Tong also conceded that while Wade was carrying no weapon or cell phone, he was also not carrying a crack pipe, which might have suggested personal use. This testimony appears to be a cogent explanation of the facts.
In short, the jury was entitled to accept the expert opinion that Wade intended to distribute the cocaine seized from his pocket. Viewed in the light most favorable to the State, the evidence proves beyond a reasonable doubt that Wade knowingly and intentionally possessed crack cocaine with the intent of distributing it. This assignment of error lacks merit.

Peremptory challenges
By his second assignment, Wade urges the District Court erred in granting the State's "reverse Batson" challenge as to prospective jurors Carrie Johns and Kathy Mawhinney. He contends that both belonged to Broadmoor Baptist Church, which reflects "a certain socio-economic background and standard of living not comparable to that of most criminal defendants" and "perhaps more likely to give undue deference to police officers." He also contends that Ms. Johns was young and would be easily led, and that Ms. Mawhinney did not know much about the drug culture. The State contends that these reasons did not overcome the prima facie showing that the defense utilized peremptory challenges only to exclude whites from the jury.
The United States constitution prohibits the State from engaging in purposeful *984 discrimination on the grounds of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It also prohibits the defendant from engaging in the same conduct. Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); State v. Knox, 609 So.2d 803 (La.1992). Louisiana law codifies this concept in La.C.Cr.P. art. 795 C, which provides:
No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
In a McCollum situation, once the State establishes its prima facie case, the burden shifts to the defendant to come forward with a race-neutral explanation. The explanation need not be persuasive or even plausible; it will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory exception. State v. Tyler, 97-0338 (La.9/9/98), 723 So.2d 939. The trial court's findings with regard to a Batson challenge are entitled to great deference on appeal. Id.; Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
On the first day of jury selection, the State raised a "reverse Batson" claim and showed that the defense used seven peremptory challenges, all to excuse white jurors. The court accepted this prima facie showing and asked defense counsel for race neutral reasons. As for Ms. Johns, counsel stated he was "very concerned about people who go to Broadmoor Baptist Church," although this was "just a feeling." Counsel also stated that Ms. Johns would be "easily led," but admitted there was nothing in her voir dire examination to support this assumption. As for Ms. Mawhinney, counsel noted that she "didn't know much about drugs" and is also a member of Broadmoor Baptist Church. Counsel denied challenging her "because she's a white female," but "just my general feeling about her [is] that she was not the type of juror I wanted on this case." When the court remarked that this was not a race-neutral reason, counsel replied, "I don't think I can give a race-neutral reason." Noting that Broadmoor Baptist was a predominantly white church, the court sustained the State's challenge.
Wade now contends that the District Court was plainly wrong to find that his explanation for challenging these two potential jurors was a pretext for race-based exclusion. We perceive no manifest error. Religious affiliation apparently played no part in the defendant's use of peremptory challenges until these he challenged these two jurors. It is not race-neutral. State v. Collier, 553 So.2d 815 (La.1989). Moreover, the comment that counsel has "a feeling" about a particular juror is not a sufficiently race-neutral explanation. State v. Ford, 26,422 (La.App. 2 Cir. 9/21/94), 643 So.2d 293, and citations therein.
Wade further contends that Ms. Johns should have been excused because she would be "easily led." In support he cites State v. Young, 613 So.2d 631 (La. App. 1 Cir.1992), writ denied 626 So.2d 1186 (1993). We agree that an inability to *985 draw one's own conclusions is a valid, race-neutral reason for challenging a potential juror. In voir dire, however, Ms. Johns disclosed that she was a member of the Society for Human Resource Managers and worked as a personnel manager for a department store; she also appeared to understand when the court asked about proof of intent. Unlike the contested juror in Young, there is nothing to suggest that Ms. Johns was "wishy washy" or easily persuaded by others. In short, the District Court did not err in sustaining the State's McCollum claim. This assignment lacks merit.

Habitual offender adjudication
By his third assignment of error, Wade urges the evidence was insufficient to adjudicate him a third felony offender. He contends that the State failed to prove that when he pled guilty to the predicate offenses, he was either represented by counsel or validly waived his rights to counsel, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). He specifically contends that the court minutes, which recite "only that the requirements of Boykin have been complied with," are insufficient to prove the pleas were valid. In support he cites State v. Jeffers, 623 So.2d 882 (La.App. 2 Cir.1993).
The State's burden of proof in habitual offender proceedings under R.S. 15:529.1 is stated in State v. Shelton, 621 So.2d 769 (La.1993):
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. 621 So.2d at 779 (footnotes omitted).
In the instant case, the State offered certified copies of the amended bill of information charging Wade with committing armed robbery on August 15, 1994, and the bill of information charging him with possessing a Schedule II CDS, cocaine, on May 22, 1997. A fingerprint expert, Sgt. McConnell, confirmed that the fingerprints on both bills belonged to Wade. The State also offered certified copies of the court minutes of May 8, 1995, when he pled guilty to armed robbery, and of February 22, 1999, when he pled guilty to possession of a Schedule II CDS. Both sets of court minutes recited, "The court informed the defendant of his constitutional rights per Boykin v. Alabama (see court reporter's transcript)." Wade did not object to the introduction of the court minutes, thus distinguishing the case from State v. Jeffers, supra. Instead, Wade offered no affirmative evidence showing any infringement of his rights or procedural *986 irregularity. State v. O'Neal, 34,814 (La.App. 2 Cir. 10/12/01), 795 So.2d 1292. Thus the court was entitled to find that the State met the initial burden under State v. Shelton, supra, and that Wade failed to meet his.
The State proved, beyond a reasonable doubt, every essential element of the habitual offender bill under R.S. 15:529.1. State v. Shelton, supra; State v. O'Neal, supra. This assignment lacks merit.

Retroactivity of habitual offender amendment
By his fourth assignment of error, Wade urges that the District Court failed to apply amended version of R.S. 15:529.1 that was in effect at the time of the multiple offender bill and the sentencing. He concedes that Louisiana courts generally apply the penalty provision in effect at the time of the offense. State v. Paciera, 290 So.2d 681 (La.1974). However, he contends that this is contrary to federal sentencing guidelines. 18 U.S.C. § 3553(a)(4). He also contends that under national jurisprudence, the defendant should receive the benefit of any ameliorative amendment enacted after the commission of the crime but before sentencing.[1]
At the time of this offense, the penalty for being a third felony offender, if the third or either of the prior felonies was a violation of the CDS law punishable by imprisonment for more than five years, was life without benefit of parole, probation or suspension of sentence. La. R.S. 15:529.1 A(1)(b)(ii). Effective June 15, 2001, the penalty for being a third felony offender is a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. La. R.S. 15:529.1 A(1)(b)(i), as amended by 2001 La. Acts No. 403. In other words, Wade's sentencing range would have been a minimum of 20 and a maximum of 60 years without benefit of probation or suspension of sentence. The amendment has prospective effect only. 2001 La. Acts No. 403, § 6.
Wade correctly argues that Louisiana applies the penalty set forth in the statute at the time of the offense. Contrary to Wade's argument, however, the courts have repeatedly stood by this rule. See, e.g., State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518; State v. Clark, 391 So.2d 1174 (La.1980); State v. Keith, 35,644 (La.App. 2 Cir. 2/27/02), 811 So.2d 136.[2] The fact that a statute is later amended to lessen the possible penalty does not extinguish liability for the offense committed under the former statute. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied 464 U.S. 865, 104 S.Ct. 202, 78 *987 L.Ed.2d 176 (1983). Two appellate courts have explicitly held that the 2001 amendment to R.S. 15:529.1 is prospective only. State v. Houston, 02-0255 (La.App. 4 Cir. 4/24/02), 818 So.2d 253; State v. Flagg, 01-965 (La.App. 5 Cir. 3/26/02), 815 So.2d 208. Despite Wade's well-researched argument, we see no need to deviate from the uniform jurisprudence of Louisiana. This assignment lacks merit.

Excessive sentence
By his final assignment of error, Wade urges the District Court imposed an excessive sentence. He first contends that because the amended version of R.S. 15:529.1 applied, his sentencing range should have been 20 to 60 years, and the court erred in exceeding this maximum. However, for the reasons already discussed, we find no merit in this argument.
In the alternative, he contends that even if the prior version of R.S. 15:529.1 applied, the mandatory life sentence without benefits still violates his right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. He submits that the District Court failed to state a factual basis for his life sentence, as required by La.C.Cr.P. art. 894.1 and State v. Lanclos, 419 So.2d 475 (La. 1982), and that a remand is necessary for compliance. He concludes that on remand, the District Court would take into account, as a factual consideration, the amendment to R.S. 15:529.1.
The definition of criminal conduct and the provision of penalties for such conduct is a purely legislative function. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Johnson, supra. Pursuant to this function, the legislature enacted the habitual offender statute, which has been held by the Supreme Court, on numerous occasions, to be constitutional. State v. Johnson, supra. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed to be constitutional. Id.; State v. Gass, 31,816 (La.App. 2 Cir. 1/20/99), 728 So.2d 896. While the judiciary is not without authority to declare a mandatory minimum sentence under the habitual offender law excessive under the facts of a particular case, this should be done only in those rare instances where there is clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, supra; State v. Randleston, 96-1646 (La.10/4/96), 681 So.2d 936. To merit a deviation below the mandatory minimum sentence, the defendant must show that he is "exceptional." State v. Johnson, supra. Such downward departures should occur only in rare instances. Id.
Wade's only contention at sentencing was that he should benefit from the amendment to R.S. 15:529.1. He did not show that he was exceptional, such that the mandatory sentence would not be "meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the crime." State v. Johnson, 709 So.2d at 676. Under the circumstances, the court was not required to comply with art. 894.1. State v. Gay, 34,371 (La.App. 2 Cir. 4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App. 2 Cir. 10/27/99), 743 So.2d 890, writ denied 00-0438 (La.9/29/00), 769 So.2d 553. It would have been an exercise in futility for the court to elaborate on sentencing factors when the court lacked discretion in sentencing this defendant. State v. Johnson, 31,448 (La.App. 2 Cir. 3/31/99), 747 So.2d 61, writ denied 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
This assignment lacks merit.

*988 Conclusion

We have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2). For the reasons expressed, Carlos Dewayne Wade's conviction, habitual offender adjudication and sentence are affirmed.
CONVICTION, HABITUAL OFFENDER ADJUDICATION AND SENTENCE AFFIRMED.
NOTES
[1] See, e.g., People v. Nasalga, 12 Cal.4th 784, 50 Cal.Rptr.2d 88, 910 P.2d 1380 (1996); State v. Morris, 131 Idaho 263, 954 P.2d 681 (Idaho App. 1998); Ford v. State, 755 N.E.2d 1138 (Ind.App.2001); State v. Chrisman, 514 N.W.2d 57 (Iowa 1994); Daniels v. State, 742 So.2d 1140 (Miss. 1999); People v. Schultz, 435 Mich. 517, 460 N.W.2d 505 (1990); State v. Coolidge, 282 N.W.2d 511 (Minn. 1979); State v. Reams, 284 Mont. 448, 945 P.2d 52 (1997); State v. Randolph, 186 Neb. 297, 183 N.W.2d 225 (1971), cert. denied 403 U.S. 909, 91 S.Ct. 2217, 29 L.Ed.2d 686 (1971); People v. Walker, 81 N.Y.2d 661, 603 N.Y.S.2d 280, 623 N.E.2d 1 (1993); State v. Pardon, 272 N.C. 72, 157 S.E.2d 698 (1967); State v. Shafer-Imhoff, 632 N.W.2d 825, 2001 N.D. 146 (2001); Commonwealth v. Santiago, 462 Pa. 216, 340 A.2d 440 (1975); State v. Macarelli, 118 R.I. 693, 375 A.2d 944 (1977); State v. Flagg, 160 Vt. 141, 624 A.2d 864 (1993).
[2] The recent case of State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, applied the penalty provision of the 2001 amendment to La. R.S. 14:98E (fourth-offense DWI) to an offense that occurred before the amendment. Mayeux, a plurality opinion, is based on a close statutory analysis of R.S. 14:98 that we find inapplicable to the instant case.