880 So.2d 1005 (2004)
STATE of Louisiana, Appellee
v.
Gerod D. BREWER, Appellant.
No. 38,515-KA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2004.
*1007 Richard C. Goorley, Shreveport, Peggy J. Sullivan, Monroe, for Appellant.
Gerod D. Brewer, Pro Se.
Paul J. Carmouche, District Attorney, for Appellee.
Tommy J. Johnson, Laura O. Wingate, Sean D. Miller, Assistant District Attorney.
Before WILLIAMS, GASKINS and MOORE, JJ.
WILLIAMS, J.
The defendant, Gerod D. Brewer, was charged by grand jury indictment with first degree murder, a violation of LSA-R.S. 14:30. The indictment was later amended to charge the defendant with second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty of the responsive verdict of manslaughter, a violation of LSA-R.S. 14:31 A(1). Subsequently, the state filed a habitual offender bill against the defendant, and the court adjudicated the defendant a third felony offender. He was sentenced to serve the mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction and sentence. For the following reasons, we affirm the defendant's conviction, his adjudication as a third felony offender, and the mandatory life sentence which was imposed.

FACTS
The victim, Robert Morris, Sr., also known as "Soot" or "Sut" lived in Mira, Louisiana. He was sixty-two years old and confined to a wheelchair. It was well-known around town that Morris would help anyone in town who needed transportation, to use the telephone or to wash his or her clothes. Morris was also known to always have large sums of cash on his person. A co-defendant, LaShonda Stromile Hill, lived next door to Morris in a trailer owned by Morris' daughter, Celest Morris. Because Morris' first wife is married to Hill's father, she referred to Morris as her stepfather.
On July 5, 2001, the day before the murder, Hill had been given an eviction notice for nonpayment of her rent. She was given three days to pay her rent or vacate her home. Hill testified that on the day of the murder, she went to Texarkana, Texas to visit the defendant, who is the father of two of her children. Since Hill's husband was in jail, she and the defendant decided to spend the evening together and party in Mira. The defendant took a change of clothing with him before they left Texarkana. During the trip, the defendant bought beer and gin which he drank throughout the drive. Hill testified the defendant told her that he needed money and asked her if Morris had any money. They then discussed plans to rob Morris, and the defendant decided that he would kill Morris to prevent them from getting caught.
Because Hill knew that Morris would not let anyone in his trailer after 8:00 p.m. unless he either knew them or the visit was prearranged, she drove the defendant to Morris' house and informed Morris that the defendant needed to use his telephone. Morris let the defendant inside and Hill went back to her car. Hill testified that she heard Morris screaming and the defendant *1008 screaming at Morris. According to Hill, when she got out of her car and walked back to the trailer, she saw the defendant stab Morris at least two times. She testified that Morris screamed to her for help, but she just screamed and ran back to her car. Hill testified that the defendant later ran from the trailer and got into the passenger seat of her car with the bloody knife in his possession. She testified that the defendant had a cut on his hand, and he was screaming, "I did it."... "I got $1400." Hill and the defendant then drove back to Plain Dealing. Hill testified that she drove the defendant to a Piggly Wiggly in Plain Dealing, where he threw the murder weapon and the victim's wallet into a dumpster. The defendant changed into his other clothes and threw the pair of jeans and t-shirt that he was wearing during the murder over the bridge in Plain Dealing. Hill drove the defendant back to Texarkana, where she spent the night. She stated that the defendant gave her some of the money from the robbery and told her to keep quiet.
Early the next morning, Hill drove back to Mira. When she realized that no one had discovered the homicide, she notified the victim's son, Robert Morris, Jr., claiming to have just discovered the crime. That same day, Hill spent her share of the money on money orders for her jailed husband and her rent payments. She also got a beauty treatment and went on a shopping spree at Wal-Mart.
During the investigation of the murder, Hill gave several different accounts of the robbery-murder, but all implicated the defendant. Both she and the defendant were arrested and charged with the murder of Robert Morris, Sr. Subsequently, Hill pled guilty to armed robbery, received an agreed sentence of 19 years and agreed to testify truthfully against the defendant. An unrelated aggravated battery charge pending against Hill was also dismissed in exchange for her testimony. At the defendant's trial, his defense was essentially that the jury should not believe Hill. The defense urged that Hill was a liar, who was protecting herself and some third party. Defendant also claimed that Hill had framed him.
The jury found the defendant guilty of the responsive verdict of manslaughter. A timely motion for new trial and in arrest of judgment was denied. The state filed a habitual offender bill, alleging a prior 1990 conviction for distribution of a Schedule I, controlled dangerous substance and a prior 1996 conviction for aggravated battery. Both of the predicate convictions were based on guilty pleas. After a hearing, the trial court adjudicated the defendant a third felony offender and imposed the mandatory sentence of life imprisonment, without the benefit of parole, probation or suspension of sentence. The court denied a timely motion for reconsideration of sentence. The defendant now appeals his conviction and sentence.

DISCUSSION

Sufficiency of the Evidence:
By this assignment of error, the defendant contends the evidence presented was insufficient to support the jury's verdict of manslaughter. He argues that the state's key witness, Hill, was not a credible witness because she had given several contradictory statements to the investigators. As stated above, the defendant was charged with second degree murder. The jury returned a responsive verdict of manslaughter, as allowed under LSA-C.Cr.P. Art. 814.
Second degree murder is "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm or when the offender is *1009 engaged in the perpetration of an enumerated felony." LSA-R.S. 14:30.1. Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. LSA-R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L. Ed.2d 798 (1990). Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371.
Manslaughter, LSA-R.S. 14:31 A(1), is defined as a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood. Both Articles 30 and 30.1 list armed robbery as an enumerated offense.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in LSA-C.Cr.P. Art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. This court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
In the instant case, the trial testimony and other evidence presented, support the defendant's manslaughter conviction. Hill testified that both she and the defendant needed money. They discussed robbing Morris. She drove the defendant to Morris' trailer and under the pretext of using Morris' telephone, gave the defendant access inside Morris' home. Hill witnessed the defendant stabbing Morris. Hill also received some of the money from the robbery-murder. Although Hill gave five different accounts to the police of the events of the crime, in each of her accounts she implicated the defendant as the actual murderer. Her false statements mainly centered around her involvement in the crime.
Moreover, other trial testimony and the physical evidence corroborated Hill's testimony. Shawanda DeBose, the defendant's cousin, testified that Hill and the defendant came to her home in Plain Dealing on the night of the homicide to request her brother's assistance in changing a flat tire. The defendant offered her $20 to call her brother. DeBose testified that the defendant was in the possession of "a lot of money" when he came to her home.
Celest Morris, the victim's daughter, testified that Morris only allowed people he knew to use his telephone. She testified Hill's rent was two months in arrears and she owed a total of $360. The day after the homicide, Hill paid the back rent with money orders. Both Sherry Abbott, an employee of the Quick Pantry in Vivian, and Tammy Terry, the store manager, confirmed that Hill purchased money orders the day after the homicide.
Caddo Parish Detective James Bonnette testified that he seized two of the bills that Hill had used to purchase money *1010 orders because the bills had red spots on them that appeared to be blood. The money was sent to the crime lab. After interviewing Hill, Bonnette and other officers searched the Plain Dealing bridge. The search team found a pair of black pants and a white T-shirt exactly where Hill stated the defendant had thrown them. They also recovered the victim's wallet and the murder weapon. Bonnette testified that in each of Hill's statements she named the defendant as the person who had killed Morris. According to Bonnette, Hill admitted her involvement in the robbery, but she denied any participation in the homicide.
Connie Brown, a forensic DNA analyst at the crime lab, testified that she examined the specimens submitted in this case. Blood found on the inside of the passenger's door of Hill's car belonged to the victim. The defendant's DNA was recovered from the console of Hill's car, the T-shirt and the currency Hill used to purchase the money orders.
The state also introduced photographs of the defendant's hands showing cuts and abrasions on them. The defendant testified that he was in Arkansas during the time of the murder and he had hurt his hand on July 5, 2001 while scaling fish at a family fish fry; however, the jury did not find his testimony credible.
After a thorough review of this record, we conclude that the evidence in the instant case, when viewed in the light most favorable to the prosecution, was sufficient to convict the defendant of the crime of manslaughter, beyond a reasonable doubt. This assignment of error lacks merit.

Improper Closing Argument

Motion for Mistrial
By his next assignment of error, the defendant contends the trial court erred in denying his motion for mistrial based on improper statements made by the prosecutor during closing argument. The defendant argues that during closing argument the prosecutor stated his personal opinion as to the veracity of LaShonda Hill's testimony.
During closing argument the prosecutor stated, "She was not lying in this courtroom yesterday. She had too much to lose. If she didn't testify truthfully she is going to be sitting right there not looking at a life sentence, looking at a possible death sentence and if for one second, one word, the State thought that she was lying this trial would have been over." At the end of the closing argument, the defense requested a mistrial based on the prosecutor's comments.
The trial court ruled that the statement did not meet the statutory requirement for a mistrial and added, "Nor do I think the jury picked up on anything that was said, nor do I think anything was stated that may have a prejudicial effect against the defendant."
The scope of the argument is defined in LSA-C.Cr.P. Art. 774, which provides in part:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice.
A mistrial is a drastic remedy which is warranted only when substantial prejudice would otherwise result to the accused. State v. Edwards, 420 So.2d 663 (La.1982); State v. Harris, 28,517 (La.App.2d Cir.8/21/96), 679 So.2d 549. Determining whether such prejudice has resulted is within the sound discretion of the trial judge. State v. Matthews, 552 So.2d *1011 590 (La.App. 2d Cir.1989), writ denied, 559 So.2d 137 (La.1990).
In State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, 200 cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995), the supreme court held that a conviction will not be reversed due to an improper remark during closing argument unless the reviewing court is thoroughly convinced the remark influenced the jury and contributed to the verdict. The court concluded, "Much credibility should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the arguments, and who have been instructed repeatedly by the trial judge that arguments of counsel are not evidence."
Based on this record, we conclude that the jury was presented with ample evidence of the defendant's guilt. Thus, we do not find that the jury was influenced by the prosecutor's remarks or that they contributed to the verdict. Moreover, an argument with regard to the credibility of a witness is proper where the credibility of the witness is in question and the facts bearing on the witness' credibility appear in the record. State v. Sayles, 395 So.2d 695 (La.1981); State v. Procell, 365 So.2d 484 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979); State v. May, 339 So.2d 764 (La.1976); State v. West, 319 So.2d 901 (La.1975).
In the instant case, the testimony at trial revealed the facts of Hill's plea agreement, her five different factual accounts of the crime to investigators and the defendant's accusation that she was lying and framing him. Therefore, because Hill's credibility was in question, the prosecutor's comments were proper. The trial court did not abuse its discretion in denying the defendant's motion for a mistrial. This assignment lacks merit.

Habitual Offender Adjudication:
By this assignment, the defendant contends the trial court erred in adjudicating him a third felony offender. He argues that the 1990 drug distribution conviction should not have been used as a predicate offense because he was not properly advised of his right to a trial by jury.
LSA-R.S. 15:529.1 D(1)(b) provides that a defendant must file a written response to the habitual offender bill of information in order to assert a claim that any conviction is invalid. This article also provides that a copy of the response shall be served on the prosecutor, and the factual basis for the challenge must be set forth with particularity. Further, the statute states, "Any challenge to a previous conviction ... which is not made before sentence is imposed may not thereafter be raised to attack the sentence."
In the instant case, the defendant did not file a written response to the habitual offender bill of information. However, he did object on constitutional grounds to the use of his April 1990 conviction as a predicate offense during the habitual offender hearing, specifically noting, prior to imposition of sentence, that the challenged guilty plea lacked an explanation of the right to trial by jury. Accordingly, we find that this issue is properly before us for review.
In State v. Shelton, 92-3070 (La.7/1/93), 621 So.2d 769, the Louisiana Supreme Court held that when a defendant in a habitual offender proceeding denies the allegations of the prior offense, the defendant has the burden of showing an infringement of his rights or a procedural irregularity. If the defendant does this, the burden of proving the constitutionality of the prior guilty plea shifts to the prosecution. If the state introduces anything less than a "perfect transcript" of the guilty plea, the judge conducting the habitual *1012 offender proceeding must weigh the evidence submitted by the parties to determine whether the state has met its burden of "proving that defendant's prior guilty plea was informed and voluntary, and was made with an articulated waiver of Boykin rights respecting jury trial, confronting accusers, and self-incrimination." See also, State v. Brady, 32,909 (La.App.2d Cir.12/30/99), 748 So.2d 1280.
A review of the transcript of the challenged guilty plea colloquy shows that the defendant was present in court with counsel. The court asked defense counsel, "Is your client ready for trial or do you want to take up the proceedings outside the presence of the venire?" Counsel replied, "Outside the presence of the jury." The court then excused the jurors.
Under these circumstances, we hold that defendant's claim that this guilty plea was invalid because he was not made aware that he had a right to trial by jury lacks merit. Although the trial judge did not specifically say "trial by jury" during the Boykin colloquy, the defendant had seen that a jury was present. Both the court and defense counsel referred to the jury which was seated in the room at that time. Thus, the record demonstrates adequately that defendant was aware he was entitled to a trial by jury. Therefore, the trial court in the instant proceeding did not err in adjudging defendant to be a third felony offender.
And see, State v. Gillespie, 486 So.2d 984, 986 (La.App. 2d Cir.1986), which held that a valid and sufficient waiver of jury trial may be entered when the defendant's attorney does so in open court in the defendant's presence, notwithstanding the trial judge's failure to inform the defendant of such a right and to have him personally state he waives same.

Excessive sentence:
By his last assignment of error, the defendant contends the mandatory life sentence imposed by the trial court is unconstitutionally excessive. He further argues that the trial court did not articulate its reasons for the sentence imposed.
Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 553. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, Johnson v. Louisiana, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
In this case, La. R.S. 15:529.1(A)(1)(b)(ii) mandated a life sentence without benefits for defendant: he is a third felony offender with prior convictions for distribution of CDS and for aggravated battery, a crime of violence under La. R.S. 14:2(13)(e).
As this court stated in State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490:
Although, in State v. Dorthey, 623 So.2d 1276 (La.1993), the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. (Citations omitted.)
*1013 Since the habitual offender law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 675. And, the mandatory life sentences it requires are presumptively constitutional and should be accorded great deference by the judiciary. State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.4/4/03), 840 So.2d 1213.
Johnson and Wade, supra, also held that the burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Johnson at 676; Wade, supra.
Here, defendant has made no such showing. Although he argues that the predicate distribution charge involved only a small amount of CDS he has not met his burden of proving that, because of that fact, he is that exceptional person for whom the mandatory sentence is not appropriate. The mandatory life sentence in this case, based on the totality of the facts and circumstances, is appropriate.

CONCLUSION
For the foregoing reasons, the defendant's conviction, his adjudication as a third felony offender, and the life sentence imposed are affirmed.
AFFIRMED.