856 So.2d 236 (2003)
STATE of Louisiana, Appellee,
v.
Haywood CEASAR, Appellant.
No. 37,770-KA.
Court of Appeal of Louisiana, Second Circuit.
October 9, 2003.
*237 James E. Beal, Jonesboro, for Appellant.
Walter E. May, Jr., District Attorney, James R. Hatch, Assistant District Attorney, for Appellee.
Before STEWART and PEATROSS, JJ., and TRAYLOR, J. Pro Tem.
PEATROSS, J.
Defendant, Haywood Ceasar, was charged with aggravated battery, in violation of La. R.S. 14:34,[1] and with possession *238 of contraband in a state correctional institution, in violation of La. R.S. 14:402[2]. Defendant was tried by a jury and convicted as charged. The trial court initially imposed on Defendant consecutive sentences of three years for the contraband offense and eight years for the aggravated battery offense. Defendant was later adjudicated to be an habitual offender, since he had three prior felonies on his record, including two felonies for violent crimes. The trial court vacated the sentence for aggravated battery and ordered Defendant to serve a life sentence concurrent with the contraband sentence. Defendant now appeals his convictions and life sentence. For the reasons stated herein, we affirm.

FACTS
In 2002, Defendant was an inmate at the David Wade Correctional Center ("Wade") in Claiborne Parish. On the morning of May 8, 2002, the inmates were released from their cells for that morning's work call. As soon as Defendant was released from his cell, he engaged in a fight with inmate John Poullard ("Poullard"), which was witnessed by several other inmates. Both Defendant and Poullard were wearing books and other objects taped to their bodies as body armor. Defendant was carrying an ice pick-like weapon, called a "shank."[3] During the fight, Poullard sustained a puncture wound to the center of his back and two puncture wounds to his upper left bicep.
A trial was held on November 18 and 21, 2002. Several guards testified that Defendant was armed with a shank; however, no one saw Defendant stab Poullard. Lt. Col. Ray Hanson ("Hanson"), unit manager of the maximum security compound at Wade, testified that Wade is a prison, owned and operated by the State of Louisiana. He described the compound as having two working cell blocks and two disciplinary blocks. The working cell block has four tiers, sixteen cells on each tier, and two bunks in each cell.
The incident in question occurred in working cell block N-2. Hanson was not present at the altercation, but he saw the body armor and the weapons that had been collected at the scene. He identified exhibits which were photographs of Defendant wearing his body armor, photographs of the victim showing two puncture wounds to his upper left arm and the wound in the center of his back and pictures of cloth Defendant had worn as protective devices on his wrists and around his neck. Hanson testified that shanks are not permitted in Wade; they aer contraband; and inmates may not possess them. After explaining the chain of custody, Hanson identified items of body armor, a pillowcase, torn sheets and a towel which came from Defendant.
Master Sergeant Dewayne Walker ("Walker") testified that, on the morning of May 8, 2002, he heard someone yell that there was a fight. He rounded a corner and saw Defendant and Poullard struggling with officers down the tier. They were the only two inmates involved in the *239 fight. While Walker was running to assist, he saw an object in Defendant's hand that was six to eight inches long and noted that both inmates were acting aggressively to each other. Defendant dropped his shank after being ordered to do so; and Sergeant Bobby Tolar ("Tolar"), who had also arrived on the scene, picked it up and gave it to Walker. Sergeant Carl Rugley ("Rugley"), another officer arriving on the scene, picked up a second shank, which had been dropped by Poullard.
Walker identified the shank that Defendant had in his possession. It was a metal rod, approximately eight inches long, sharpened to a point on one end with a sheet or blanket material wrapped around the other end for use as a handle. Walker testified that, as a whole, the object was "very much favoring an ice pick." The shank taken from Poullard was identified by Walker as an ear piece from eye glasses with a sharp object stuck in the end of it and sharpened to a point. On cross examination, Walker read from his report that he had seen the shank in Defendant's hand as he ran to break up the fight and that the two shanks had been recovered.
Sergeant Jerry Anderson ("Anderson") testified that, when Defendant and Poullard came out of their cells on the morning of this incident, they began fighting immediately. He testified that both inmates were "tussling, wrestling, swinging at each other." Anderson attempted to break up the fracas by grabbing Defendant and yelling for help.
Sergeants Anderson and Wallace grabbed Defendant and took him to a different tier to restrain him. As Defendant dropped to his knees, Anderson saw a weapon like an ice pick in Defendant's right hand. Defendant complied with Anderson's order to drop the weapon and Tolar picked up the weapon. Anderson identified the weapon at trial as the one Defendant had possessed. At trial, Defendant, acting pro se, "questioned" Anderson about the fight.[4] On cross examination, Anderson said he did not observe Defendant strike Poullard with a weapon. Defendant asked:
If I had a weapon and inflicted bodily harm on John Poullard, why is it that no officers said they actually saw me stabbing the inmate with a weapon or they actually saw him stabbing me with a weapon. If they say they saw a fight, I mean, and they apprehended the situation, they should've saw (sic) a weapon.
The prosecutor objected to this question stating:
Your Honor, I object to this line of questioning. He'll have a chance to testify and he'll have a chance to argue.
The court overruled the objection and allowed Defendant to complete the question. There was no contemporaneous objection to the prosecutor's remark. On redirect, Anderson said he did observe Defendant striking Poullard and that Defendant had a shank in his hand.
Sergeant Jeremy Wallace ("Wallace") testified that he looked up when he heard someone yell "fight" and saw Poullard on the ground with Defendant standing over him. Wallace did not see the shank until Sgt. Anderson had it in his hand.
Tolar testified that he did not arrive at the altercation until Wallace and Anderson *240 had restrained Defendant. As the guards put Defendant down on the floor, Tolar saw a shank in Defendant's hand. Anderson and Tolar yelled for Defendant to put it down and he complied. Tolar grabbed the shank and he identified the shank at trial as the one Defendant had in his hand.
Rugley testified that, on the day in question, he heard yelling and ran into the building to help. When he got to the scene, both inmates had been restrained. Rugley saw a shank on the floor near Defendant.
Nurse Pam Austin, an employee of the Wade medical department, testified that she examined Poullard at 8:00 a.m. on the date of this incident. He had a puncture wound halfway down the middle of his back and two wounds to his left bicep area. Nurse Supervisor Danny Davidson testified that he examined Defendant after the fight. He testified that Defendant was "unscathed," and had "no abrasion, laceration, trauma, bruising, nothing whatsoever." The victim did not testify at trial.
As previously stated, Defendant was charged with aggravated battery and with possession of contraband in a state correctional institution. He was convicted by a jury as charged. Defendant now appeals, raising the following assignments of error (verbatim):
1. A life sentence is excessive for this offender in this case;
2. The evidence was not sufficient to convict the defendant of the charge of Aggravated Battery;
3. The Court erred in failing to order a mistrial after the District Attorney improperly commented on defendant's failure to testify; and,
4. Defendant's conviction of possession of contraband in a State Penitentiary constituted double jeopardy.

DISCUSSION
Although the record does not reflect that Defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.

Sufficiency of the Evidence
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The principal criterion of a Jackson v. Virginia, supra, review is rationality. State v. Mussall, 523 So.2d 1305 (La.1988). Due process demands that a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. Id.
Defendant argues that no officer testified to having seen him stab the victim. He insists that it is reasonable to assume the victim self-inflicted his wounds or that someone else in the crowd of bystanders stabbed the victim. Defendant contends that the prosecution failed to exclude every reasonable hypothesis of his *241 innocence and that the circumstantial evidence was insufficient to convict him of the charge of aggravated battery.[5] We do not agree.
The clear weight of the evidence shows that Defendant and Poullard rushed each other immediately after coming out of their cells and that both inmates were carrying weapons. Based on the testimony at trial, Defendant's arguments are inconsistent with a reasonable hypothesis that someone other than Defendant stabbed Poullard. None of the officers saw any other inmate involved in the altercation. Notably, none of the witnesses testified that they saw anyone other than Defendant strike the victim. Anderson was present throughout the fight. He saw Defendant and Poullard fighting and he broke it up. No other inmate was involved and no other inmate was wearing body armor or protective devices. Thus, there is no evidentiary basis to support a reasonable hypothesis that one of the other bystanders actually committed the aggravated battery on Poullard. Every reasonable hypothesis of Defendant's innocence has been excluded. Viewed in a light most favorable to the prosecution, we find that the testimony and evidence were legally sufficient to conclude beyond a reasonable doubt that Defendant committed an aggravated battery upon Poullard by stabbing him with the shank. Defendant's assignment of error has no merit.

Double Jeopardy
Defendant argues that, because aggravated battery requires use of a dangerous weapon, the possession of that weapon is an element of the offense and an attempt to convict him of both aggravated battery and possession of contraband in a state correctional institution places him in double jeopardy. Louisiana uses both the "Blockburger test" and the "same evidence test" in determining whether double jeopardy exists. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Louisiana also uses the broader "same evidence" test which dictates that:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.
State v. Steele, 387 So.2d 1175 (La.1980); State v. Robertson, 511 So.2d 1237 (La. App. 2d Cir.1987), writ denied, 516 So.2d 366 (La.1988). This test depends on the proof necessary for a conviction, not the evidence that is actually presented at trial. State v. Knowles, 392 So.2d 651 (La.1980), on subsequent appeal, 395 So.2d 678 (La. 1981).
In State v. Dunn, 454 So.2d 1301 (La.App. 3d Cir.1984), writ denied, 458 So.2d 487 (La.1984), the court held that convictions for aggravated battery and possession of a firearm by a convicted felon, arising out of the same conduct, did not violate the prohibition against double jeopardy because each offense required proof of elements not included in the elements of the other offense. The same reasoning used to reach the conclusion in State v. Dunn, supra, applies in the case *242 sub judice. Both Defendant's offenses of aggravated battery and possession of contraband in a state correctional institution require proof of elements not included in elements of the other offense and the same evidence is not used to support a conviction of both crimes.
Defendant's argument ignores the fact that possession of contraband in a state correctional institution requires proof that the accused was in a correctional institution, an additional fact which does not need to be proven to convict Defendant of aggravated battery. Moreover, in order to prove that aggravated battery has been committed, the State must prove that Defendant used the weapon to commit a battery against the victim, an additional fact which does not need to be proven to convict Defendant of possession of contraband in a state correctional institution. Prosecution of both aggravated battery and possession of contraband in a state correctional institution do not rest on proof of the same facts or use of the same evidence to support the conviction of the other crime. Defendant's assignment of error has no merit.

Prosecutorial Comment
Defendant contends that the prosecutor's remark at trial was an impermissible reference to Defendant's intention not to testify and the court should have ordered a mistrial, even in the absence of his objection or motion for mistrial. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841; State v. Bosley, supra; State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992); State v. Brown, 552 So.2d 612 (La.App. 2d Cir.1989), writ denied, 558 So.2d 581 (La. 1990).
The jurisprudence in Louisiana specifically holds that, in the absence of a defense objection, the defense may not raise on appeal the question of whether the prosecutor impermissibly commented on the defendant's failure to testify. State v. Wesley, 33,402 (La.App.2d Cir.5/10/00), 759 So.2d 286, writ denied, 00-1702 (La.4/12/01), 788 So.2d 1201. Due to the lack of a contemporaneous objection, this issue is not properly before this court. Defendant's assignment of error has no merit.

Defendant's Sentence
Defendant argues that his life sentence is grossly disproportionate to the considerable mitigating evidence cited by the court when the original eight-year sentence was imposed. At the time of the original sentence, the trial judge noted that both participants in the affray wore body armor, as if prepared for a confrontation, and that a shank was found near the victim, which implied that the victim may have provoked the Defendant's actions. Even if there was provocation, however, we note that Defendant had ample time to prepare body armor and ample time to cool off and avoid the confrontation entirely.
In this case, La. R.S. 15:529.1(A)(1)(c)(ii)[6] mandated a life sentence without benefits for Defendant. He is now a fourth-felony offender and two of his prior felony convictions (manslaughter and second degree battery) are defined as crimes of violence. See La. R.S. 14:2(13)(d) and (f). As a panel of this court held in State v. Ponsell, 33,543 (La. *243 App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490:
Although, in State v. Dorthey, [623 So.2d 1276 (La.1993)] the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. (Citations omitted.)
Since the habitual offender law in its entirety is constitutional, the minimum sentences it imposes upon a Defendant with multiple offenses are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The mandatory life sentences the habitual offender law requires are presumptively constitutional and should be accorded great deference by the judiciary. State v. Wade, 36,295 (La. App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 02-2875 (La.4/4/03), 840 So.2d 1213.
The courts in State v. Johnson, supra, and State v. Wade, supra, also held that the burden was on the Defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the Defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, supra; State v. Wade, supra.
Defendant had prior convictions for manslaughter (bargained down from second degree murder), second degree battery (bargained down from aggravated battery) and simple escape. He has not made any showing that he is exceptional because of unusual circumstances that would show he is a victim of the legislature's assignment of sentences meaningfully tailored to his culpability, the seriousness of the offense and the circumstances of the case. Rather, the evidence shows that Defendant has a history of violence. Defendant has killed before and the evidence shows that he was fully prepared in this instance to kill again. The prior conviction for second degree battery arose while Defendant was in prison. He is exactly the type of person for whom a life sentence is intended and appropriate. Defendant's assignment of error has no merit.

CONCLUSION
For the foregoing reasons, the convictions and life sentence of Defendant, Haywood Ceasar, are affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 14:34 provides:

Aggravated battery is a battery with a dangerous weapon.
[2] La. R.S. 14:402(B) provides:

No person shall possess contraband upon the grounds of any state correctional institution.
Further, La. R.S. 14:402(D)(2) provides in pertinent part that contraband means:
A dangerous weapon, or other instrumentality customarily used or intended for probable use as a dangerous weapon....
[3] A weapon, in this case an ice pick-like weapon, is often referred to in general terms as a "shank" in the prison subculture and the weapon in this case is called a shank by the parties involved.
[4] The trial judge allowed Defendant to represent himself pro se at the trial after he informed the trial judge that he wished to exercise his constitutional and statutory right to represent himself. The trial judge only approved Defendant's request after explaining to Defendant his options relating to representation and after inquiring into whether Defendant understood the dangers and disadvantages of representing himself and the particular legal issues that might apply to his case.
[5] La. R.S. 15:438 provides:

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
[6] La. R.S. 15:529.1(A)(1)(c)(ii) provides, in pertinent part:

If the fourth felony and two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) ..., the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.