CARAWAY, J.
_[iThis appeal resulted from the trial court’s denial of the defendant’s motion to quash which was based on his assertion of double jeopardy. After being arrested and convicted in Webster Parish for events that transpired on September 9, 2009, the defendant was charged in Bossier Parish for additional charges involving events that occurred on the same day. For the following reasons, we reverse.

Facts

All of the arrests, charges, and convictions stem from events that occurred on September 9, 2009. At that time, the defendant, Oscar Cleoffice Balentine, was arrested in Webster Parish. He was charged with and ultimately pled guilty to operation of a clandestine laboratory for the unlawful manufacture of a Schedule II controlled dangerous substance, methamphetamine, in violation of La. R.S. 40:983. After conducting a presentence investigation report (“PSI”), the trial court sentenced the defendant to the minimum, 5 years’ hard labor punishment.
The defendant came up for parole a few years into his sentence. At that time, the state charged the defendant in Bossier Parish with the manufacture of a controlled dangerous substance, Schedule II, namely methamphetamine, in violation of La. R.S. 40:967(A)(1) and conspiracy to manufacture a controlled dangerous substance in violation of La. R.S. 14:26 and 40:967(A)(1) based upon events that also occurred on September 9, 2009.
|2On March 13, 2012, Balentine filed a motion to quash on the basis of double jeopardy, arguing that he had previously pled guilty to operation of a clandestine lab for the unlawful manufacture of methamphetamine in violation of La. R.S. 40:983 *981 based on the same events. Balentine argued that the conviction in Webster Parish and the current charges in Bossier Parish are part of a continuous offense that occurred on or about September 9, 2009.
At the hearing on the motion to quash held on April 16, 2012, the state argued that the motion to quash should be denied. The assistant district attorney asserted:
In Webster Parish ... he has pled guilty to a lab, but he has not pled guilty to the manufacturing, which is different and under Note 9, although, what they did, they started manufacturing in Bossier Parish and during the manufacturing process they determined that one of the ingredients they needed had gotten wet, couldn’t use it, so they bundled everything up and took it over to Webster Parish. There they were convicted of the lab because they never finished the manufacturing process over there. They were apparently arrested soon after they got over there as near as I can determine from the facts. The police were given a tip by someone. They showed up over in Webster Parish ... 30 feet away from the residence of Oscar Balentine, where they found the glassware in a backpack.
The state’s explanation indicated that the substance that left Bossier Parish was the same substance recovered by police in Webster Parish. Despite this, the state argued that the elements for the two statutes were different and warranted a denial of the defendant’s motion to quash. The trial court agreed and denied the motion.
As a result of the trial court’s ruling, the defendant pled guilty to attempted manufacturing of methamphetamine in Bossier Parish, reserving |3his right to appeal the denial of his motion to quash. The sécond count, conspiracy, was dismissed.
The facts to which defendant pled guilty under Boykin[1] in Bossier Parish were stated as follows:
Within the confines of Bossier Parish, Louisiana, on or about September 9, 2009, this defendant, along with Benjamin Balentine and Michael Huddleston, started assembling in Bossier City, Bossier Parish, Louisiana, the materials to manufacture schedule II substance, namely, methamphetamine.... The gathering of the materials began the weekend before, which was Labor Day weekend, culminated with them going out on or about September the 9th, where they started to or — or they began the process of manufacturing methamphetamine. There was at some point in the manufacturing process one of the ingredients they needed had become where they could not use it. So they took the product they had at that time, which only needed the one more ingredient, it was in a container of some type, they — they vented it out through the car and they transported it over to Webster Parish, Louisiana.... But they had all of the ingredients to manufacture the methamphetamine, it’s just some of it got wet and they couldn’t use it. So they were attempting to manufacture a methamphetamine in Bossier Parish, Louisiana.
In comparison, the factual basis for the Webster Parish case was set forth in the Boykin transcript for the defendant’s plea and attached to the state’s opposition to the motion to quash:
If this matter were to go to trial, the State would present evidence which would prove that Oscar Balentine, on or about the 9th day of September of 2009, did knowingly and intentionally operate a clandestine laboratory with unlawful *982 manufacture of a Schedule II controlled dangerous substance, namely, methamphetamine. Officers went to ... the residence of Oscar Balentine, and did discover the makings of what appeared to be an operation that was creating a substance that was believed to be a Schedule II methamphetamine. That substance was discovered there at that residence and was subsequently sent to the North Louisiana Criminalistic Laboratory and in fact determined to be and did determine to contain methamphetamine, a Schedule II.
1,[Balentine’s sentencing hearing was scheduled for July 3, 2012. The trial court ordered a PSI report. At the sentencing hearing, the trial court noted that this was the defendant’s third felony conviction. However, he noted that the “second felony arose out of a string of facts and circumstances that were connected to this particular charge just in a separate parish, our neighbor, sister parish of Webster.” Given the connection between the two felonies, the trial court sentenced Balentine to five years at hard labor to run concurrently with the Webster Parish sentence and credit for time served. Balentine appeals the denial of his motion to quash on the basis of double jeopardy.

Discussion

The double jeopardy clause was made applicable to the states through the Fourteenth Amendment, and Article I, § 15, of the Louisiana Constitution contains a similar guarantee. State v. Redfearn, 44,709 (La.App.2d Cir.9/23/09), 22 So.3d 1078, writ denied, 09-2206 (La.4/9/10), 31 So.3d 381. The guarantee provides three central constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after convictions; and (3) protection against multiple punishment for the same offense. State v. Drake, 46,232 (La.App.2d Cir.6/22/11), 71 So.3d 452, 461; State v. Redfearn, supra. La.C.Cr.P. art. 596 states that:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether |sor not a responsive verdict could have been rendered in the first trial as to the charge in the second trial;
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
Louisiana uses both the “Block-burger test” and the “same evidence test” in determining whether double jeopardy exists. La.C.Cr.P. art. 596; State v. Ceasar, 37,770 (La.App.2d Cir.10/9/03), 856 So.2d 236; State v. White, 35,235 (La.App.2d Cir.10/31/01), 799 So.2d 1165. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Additionally, Louisiana uses the “same evidence test” which states that if the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for the conviction, not all the evidence introduced at trial. State v. Steele, 387 So.2d 1175 (La.1980); State v. Ceasar, supra; State v. White, supra; State v. Robertson, 511 So.2d 1237 (La. *983 App. 2d Cir.1987), writ denied, 516 So.2d 366 (La.1988).
In this case, the defendant alleges double jeopardy exists due to the “same evidence test.” Some defendants claiming double jeopardy under the “same evidence test,” including Balentine, have asserted that there was one, continuous offense with one set of evidence, instead of two separate and ^distinct offenses with separate evidence supporting each. A continuous offense has been defined by the state supreme court as “a continuous, unlawful act or series of acts set in motion by a single impulse and operated by uninterrupted force.” City of Baton Rouge v. Ross, 94-0695 (La.4/28/95), 654 So.2d 1311, 1321.
The burden of proof at a hearing on a motion to quash based on double jeopardy grounds has not been addressed by the Louisiana jurisprudence. A clear majority of federal circuit courts have held that once a defendant makes a prima facie nonfrivolous double jeopardy claim, the burden of proof shifts to the prosecution to prove by a preponderance of the evidence that the indictments charge separate offenses. State v. Green, 96-0256 (La.App. 1st Cir.12/10/96), 687 So.2d 109.
The defendant was charged and convicted of La. R.S. 40:983 in Webster Parish. La. R.S. 40:983 makes it unlawful for any person to knowingly or intentionally create or operate a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance and defines this crime, in pertinent part, as follows:
A. Creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance is any of the following:
(1)The purchase, sale, distribution, or possession of any material, compound, mixture, preparation, supplies, equipment or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance.
(2) The transportation or arranging for the transportation of any material, compound, mixture, preparation, supplies, or equipment with the intent that such material, compound, mixture, preparation, supplies, or equipment be used for the unlawful manufacture of a controlled dangerous substance.
(3) The distribution of any material, compound, mixture, preparation, equipment, supplies, or products which material, [7compound, mixture, preparation, equipment, supplies, or products have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance.
(4) The disposal of any material, compound, mixture, preparation, equipment, supplies, products, or byproducts, which material, compound, mixture, preparation, equipment, supplies, products, or byproducts have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance.
In the present prosecution, Balentine was charged and pled guilty to the attempt to manufacture a controlled dangerous substance, Schedule II, in violation of La. R.S. 40:967(A)(1). La. R.S. 40:967(A)(1) states that it shall be unlawful for any person knowingly or intentionally:
(1) to produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II.
The jurisprudence reveals a conviction under La. R.S. 40:967(A)(1) for attempted production and manufacture by a defendant found in possession solely of the equipment used for the processing of methamphetamine without the finished *984 product. State v. Theriot, 04-897 (La.App. 3d Cir.2/9/05), 893 So.2d 1016.
Manufacture means the production, preparation, propagation, compounding, or processing of a controlled dangerous substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis. La. R.S. 40:961(24).
Our review of the two crimes charged in the separate parishes reveals that both involve the same offense of manufacture of methamphetamine, though expressed in distinct statutory provisions. Critically, neither statute [^requires possession of the finished methamphetamine. Of the two statutes, only Section 967(A)(1) mentions possession as a possible element for the crime of distribution. Yet, that was not the statute of conviction in Webster Parish, the only place where the finished methamphetamine was found. Likewise, both statutes’ use of the statutorily defined term “manufacture” reveals that the common element of intent to manufacture may be proven by the preparation and processing of compounds that might lead to the finished controlled dangerous substance. Finishing the processing of the compounds is not required as an element of either crime. We therefore find that the charges in each parish meet the test for double jeopardy under La. C.Cr.P. art. 596(1) and that the elements of proof required for intent to manufacture methamphetamine were the same.
The second aspect of the analysis concerns the “same evidence test.” Also related to this inquiry is the Legislature’s expression in Article 596(2) that the second charge be “based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.” La.C.Cr.P. art. 596(2).
At the hearing on the motion to quash, the assistant district attorney admitted that on September 9, 2009, the manufacturing process, with an unfinished compound of ingredients for the manufacture of methamphetamine, began in Bossier Parish and moved to Webster Parish. The evidence of that manufacturing operation served as the basis for Balentine’s first conviction. While it is not completely clear, all expressions in the record, including the description of the crime at the two Boykin | ¡¡hearings, indicate that equipment for the “lab” moved with the unfinished compound between parishes. From this prima facie showing, the state was required to show that separate labs or distinct manufacturing events occurred in both parishes. As the record now stands, the same facts surrounding Balentine and the vehicle containing the lab and compound could prove a crime under either statute in Bossier Parish on September 9, and those same facts, sufficient for the first conviction, continuously existed as that vehicle moved into Webster Parish. Accordingly, we find that the “same evidence test” is met and that double jeopardy requires reversal of the present conviction.

Decree

Defendant’s conviction is reversed upon our finding of double jeopardy.
REVERSED.
DREW, J., dissents with written reasons.

. Boykin v, Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).