986 So.2d 828 (2008)
STATE of Louisiana, Appellee
v.
Paul ROBBINS, Appellant.
Nos. 43,240-KA, 43,241-KA, 45,242-KA.
Court of Appeal of Louisiana, Second Circuit.
June 4, 2008.
*830 Louisiana Appellate Project By Annette Roach, for Appellant.
Paul Robbins, In Proper Person.
J. Schuyler Marvin, District Attorney, John M. Lawrence C. Sherburne Sentell, III, Assistant District Attorneys, for Appellee.
Before WILLIAMS, MOORE and LOLLEY, JJ.
MOORE, J.
The defendant, Paul Robbins, was convicted of distribution of methadone and distribution of marijuana. After being adjudicated an habitual offender, he was sentenced to 45 years at hard labor on each count, the sentences to run concurrently. The defendant now appeals. For the reasons set forth below, we affirm the convictions and sentences.

PROCEDURAL HISTORY
On October 5, 2005, Paul Robbins and his wife, Nancy Robbins, were charged by two bills of information with distribution of methadone, a violation of La. R.S. 40:967 (43,240-KA), and distribution of marijuana, a violation of La. R.S. 40:966 (43,241-KA). The matters were consolidated for trial, a sanity commission found Paul Robbins competent, and following a jury trial in *831 July 2006, he was found guilty as charged on both counts.
On October 30, 2006, he was sentenced to seven years at hard labor for distribution of methadone and sentenced to five years suspended for distribution of marijuana; the sentences were to run consecutively. On January 19, 2007, the state filed a multiple offender bill alleging Robbins had four prior felony convictions; on April 10, 2007, an amended bill was filed asserting that he had five prior felony convictions. At the hearing on the amended multiple bill, the court found Robbins to have three prior felony convictions. On August 10, 2007, the original sentences were set aside, and Robbins was sentenced as a fourth felony offender to serve 45 years at hard labor on each count, the sentences to run concurrently (43,242-KA). A motion to reconsider sentence was denied without a hearing on September 6, 2007. Finally, on September 28, 2007, a motion for appeal was filed under all three docket numbers.

TRIAL PROCEEDINGS/EVIDENCE
At trial, Sergeant Shawn Baker of the Webster Parish Sheriff's Office testified that a confidential informant, Deanna Patton, wearing a hidden camera and microphone, bought drugs from Paul and Nancy Robbins. Patton had gotten in trouble for "insufficient funds" and had agreed to help law enforcement in order to get more time to repay. Sergeant Baker's testimony was used to introduce the methadone, marijuana and lab report on the drugs into evidence. His testimony also identified a DVD of the transaction made with the hidden camera; that DVD was played for the jury.
Deanna Patton testified about using the undercover camera equipment. She testified to buying the marijuana and the methadone and to paying $55. According to Patton, Paul Robbins sold her the drugs and his wife handed them to Patton; at one point, Paul Robbins gave her change. She testified that Patton told her "anything I wanted he could get it for me."
On cross-examination, Patton admitted that she had used drugs over six years ago, and that she learned about the house where the transaction took place from a boyfriend who had "a very bad drug problem." On redirect, Patton indicated that she had been to the house earlier that day, but what she had gone there for wasn't there then; she was told it would be there later that evening, so she went back later and made the buy. On re-cross, she could not remember whether on the first occasion she had spoken to Paul Robbins or Nancy Robbins.
Nancy Robbins, who pled guilty to distribution of methadone and was serving a three-year sentence, testified that she was not promised anything in exchange for her testimony. She stated she knew Deanna Patton because "We've bought drugs from her and she's bought them from me." Ms. Robbins admitted that she and her husband sold Patton the drugs at issue, and Paul Robbins had obtained the drugs and had gotten the money from the sale. She testified that while he was in the house, he made the decisions regarding to whom to sell drugs.
On cross-examination, Ms. Robbins testified that she had purchased drugs from Deanna Patton on two occasions within the last year. Robbins said that on the day of the sale of the drugs to Patton, Patton had come to the residence two times, "one time before and then she came back and that's when she got the stuff."
Lieutenant Marvin Garrett testified that he was assigned to the narcotics division of the Minden Police Department. Like Sgt. Baker, he testified about sending Deanna *832 Patton as a confidential informant with hidden audio and video to the residence where Paul and Nancy Robbins were in the Dixie Inn. His testimony essentially was cumulative to that of Baker, and at the conclusion of his testimony, the state rested.
During the lunch hour after Garrett's testimony, Robbins' attorney objected to the state showing portions of the video during closing arguments, but the objection was overruled. Robbins also informed the court that he did not want to testify on his own behalf and that there was no coercion in that decision. When the jury returned, the defense rested and closing arguments began. During the state's closing argument, defense counsel made a motion for a mistrial that was argued outside the presence of the jury. Counsel objected to the use of a Power Point presentation that included printed excerpts from the audio of the DVD that had been viewed by the jury; counsel stated that the presentation was inflammatory and stated that because the audio from the DVD was not good, the prosecutor was interpreting and that the DVD itself was the best evidence of what was actually said. The state argued that under C.E. art. 1006 voluminous writings, recordings, and photographs can be presented in the form of a chart, summary, or calculation. The court agreed with the state and overruled the objection.
Before defense counsel had made her motion/objection, the prosecutor told the jury:
Some things I wanted to highlight for you. Here, Paul Robbins did more, though, than just sit there, he did more than aid or abet, he did more than merely help, he participated. I'd like to put our slides up. These are some of the quotes. I'm going to show the video to you and I want you to recognize and listen for these.
However, after the motion/objection, when the jury returned, the prosecutor said,
Right before we were interrupted I was telling you that Paul Robbins did not merely aid and abet.... As evident from what I think the evidence will show when I replay the video for you ... I want you to pay attention and I believe you'll see the testimony reflects the following.
Thus, before the DVD was played (the second time) for the jury, the prosecutor had referred to the words of the "slides" on the one hand as "quotes," but on the other hand as what he thought the evidence would show and what he believed the testimony reflected.

DISCUSSION
By his first assignment of error, the defendant argues that the trial court erred in not granting the defense's motion for a mistrial due to the improper closing argument of the state. It further erred in permitting the state to present a Power Point presentation during its closing that exceeded the evidence presented in the case.
The defendant argues that the state's closing argument was designed to inflame the jury against Robbins by "misleading and selective quotes" from the video and "the repeated references to him as a `kingpin'." Defendant argues that La. C. Cr. P. art. 774 limits closing argument to the evidence admitted during the case, to the lack of evidence, to conclusions of fact that may be drawn therefrom and to the applicable law. Thus, the defendant argues that the first step in the analysis of this issue is whether the Power Point was a correct interpretation of the video. Defendant submits that it is not, citing as an example a "slide" stating, "I have Lortab *833 10's, Percocet, Methadone 10's." Defendant asserts that what is missing "is the reference by the male voice that he gets the Lortab and Methadone for pain and the Percocet for cancer." Defendant also argues that the presentation supplies words or conclusions that are not on the video itself. An example noted is a "slide" stating, "I have to quarter it out and Z it out to make money." Instead, defendant argues that "the male made no reference to making money, instead he said `to get it back'." Other alleged examples are comments in brackets where the prosecutor made the assumptions that Nancy Robbins turned to Paul Robbins for approval to sell $40 worth of marijuana and that his weekend trip was to purchase marijuana. Defendant alleges that these "improper inserts" planted facts in the jury's mind that went beyond the evidence presented and served no useful purpose but to inflame the jury against the defendant.
Additionally, the defendant argues that the presentation went beyond the evidence testified to or admitted. It notes that during its case in chief, the prosecution did not ask any of its key witnesses to identify the male voice on the tape. Although the state asserted that the presentation was admissible because it "is as if we called each of the witnesses and had them testify," the defendant argues that this is not true because the state could not have called Paul Robbins to the stand and required him to testify. The defendant also argues that La. C.E. art. 1006 does not apply because the video was played to the jury so that there was no need for a summary of the evidence.
Next, the defendant argues that the state's reference to him as the "kingpin" during closing argument was not supported by the evidence. Defendant admits that improper references in closing arguments are subject to the harmless error rule, but argues that the state's argument was not harmless because it exceeded proper closing arguments and usurped the jury's own responsibility to listen and watch the video and decide for themselves what was said, who was involved, and the level of culpability of each person.
The state simply argues that use of the "power point video slide" was proper under La. C.E. art. 1006, and that the use of the term "kingpin" was not objected to contemporaneously.
The scope of closing argument is limited to the evidence admitted, the lack of evidence, conclusions of fact drawn therefrom, and the law applicable to the case. La. C. Cr. P. art. 774. The trial court has wide discretion in confining the arguments to the scope of the evidence. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Martin, 539 So.2d 1235 (La.1989). Furthermore, a prosecutor has considerable latitude in making closing arguments. Casey, supra; State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996); State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986). The Louisiana Supreme Court has recognized that "much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 258, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996). Before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced that the jury was influenced by the remarks and that they *834 contributed to the verdict. Taylor, supra; Byrne, supra.
In State v. Harvey, 26,613 (La.App. 2 Cir. 1/25/95), 649 So.2d 783, writ denied, 95-0430 (La.6/30/95), 657 So.2d 1026, we held that a computer-generated animation of a shooting was an admissible demonstrative aid to the testimony offered by the coroner as a qualified expert witness. The defense objected to the animations, arguing that their probative value was outweighed by their prejudicial effect. Holding that the animations were admissible, we noted that a re-creation does not need to be exact in every detail. We concluded that the animations did no more than illustrate the coroner's version of how the shooting occurred and enhanced the jury's understanding.
The Louisiana Supreme Court has held that reexamination of evidence by the jury during closing argument does not constitute error. State v. Rowell, 306 So.2d 671 (La.1975); State v. Atkins, 360 So.2d 1341(La.), cert. denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).
Under La. C. Cr. P. art. 841, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.
We observe that the "kingpin" reference was not objected to at trial, and under Art. 841, it cannot be availed of now. The same is true of the admissibility of the DVD of the drug transaction with respect to Robbins' voice and words being on the DVD. Under Atkins and Rowell, supra, there was nothing improper about allowing the jury to look at the video a second time during the state's closing argument. Furthermore, because the jury did see the video after viewing the state's Power Point presentation, we are not convinced that the jury was influenced by the alleged variations between the "slides" and the video such that they contributed to the verdict. Instead, as recognized by the Louisiana Supreme Court in Mitchell, supra, "much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." The state's initial statement that the slides showed quotes and subsequently that the slides showed what the state thought the evidence would show is of no moment. Given the testimony and particularly the DVD of the drug transaction, the evidence of Robbins' guilt was overwhelming. Therefore, this assignment is without merit.
By his second assignment of error the defendant contends that the trial court erred in enhancing both sentences under the Habitual Offender Law when the convictions arose from a single criminal episode and were entered on the same day. The enhancement of both sentences, he argues, violated his constitutional right to due process because he was not placed on fair notice of the consequences of his actions.
The crime occurred on August 3, 2005. Robbins was convicted on July 18, 2006 and adjudicated an habitual offender on May 14, 2007. On August 10, 2007, he was sentenced as an habitual offender on both crimes arising out of the single drug transaction. The defense objected to both sentences being enhanced. On appeal, he contends that enhancing both sentences was contrary to the law at the time, and violated due process.
Three months after the habitual offender sentences were imposed, the Louisiana Supreme Court in State v. Shaw, 06-2467 (La.11/27/07), 969 So.2d 1233, held that the Habitual Offender Law did not bar enhancement of more than one conviction obtained on the same date and arising out *835 of a single criminal episode or course of conduct, overruling State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991). The court also noted that the holding applied retroactively to all non-final convictions. Notwithstanding this pronouncement from the court, counsel for the appellant contends that retroactive application of Shaw is barred by three rules of law in this case.
The first rule cited by appellate counsel is the long-established legal presumption that a defendant is presumed to know the law and the consequences of his actions.[1] The second rule counsel recites is that "the law in effect at the time of the commission of the crime is the applicable law, including the penalty provisions." Finally, the third rule counsel recites is the state and federal constitutional prohibition against ex post facto laws.
These rules are actually aspects of the principle of legality. The principle of legality is the basic premise of criminal law that "conduct is not criminal unless forbidden by law which gives advance warning that such conduct is criminal."[2] This principle is based on four interconnected rules or principles: (1) the ancient rule of nullem crimen sine lege ("no crime without a law"); (2) the prohibition of retroactively criminalizing conduct (e.g., ex post facto laws); (3) the ancient rule of nullem poena sine lege ("no punishment without law") (This principle operates to prevent a heavier penalty than that authorized by statute); and, (4) the prohibition against the retroactive imposition of more severe penalties than previously authorized.[3]
The fundamental issue raised by this assignment is whether the defendant is afforded protection under either the principle of legality or the more narrow corollary of this principle-the constitutional prohibition against ex post facto laws. Ordinarily, the principle of legality and the prohibition against ex post facto laws apply to legislatively enacted criminal statutes and laws. However, as observed by counsel, "if a judicial construction of a criminal statute is `unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).[4]
We note, however, that the court in Shaw not only held that La. R.S. 15:529.1 (the Habitual Offender Sentencing Statute) was misinterpreted or misconstrued in State ex rel. Porter v. Butler, supra, it also regarded the jurisprudence construing the statute as unsettled, as demonstrated by the analysis in this court's opinion in State v. Shaw, 41,233 (La.App. 2 Cir. 8/23/06), 939 So.2d 519[5] and State v. Johnson, *836 2003-2993 (La.10/19/04), 884 So.2d 568. Hence, the supreme court's rationale for retroactive application to non-final cases appears to be that overruling State ex rel. Porter v. Butler does not actually constitute a change in the law as it was enacted and amended by the legislature. We are therefore unwilling to characterize the supreme court's construction of the statute as "unexpected and indefensible with reference to previously expressed law."
Although counsel's lucid, well-reasoned arguments raise interesting and fundamental questions regarding retroactive application of the supreme court's construction of La. R.S. 15:529.1, we are constrained by the authority of its decision in State v. Shaw, supra, to apply that court's most recent expression of the law. Accordingly, we must conclude that this assignment is without merit.
By his third assignment of error, the defendant argues that the trial court imposed excessive sentences upon Paul Robbins in violation of his constitutional right against excessive punishment.
The defendant argues that the 45-year hard labor sentences imposed are excessive considering the drug transaction at issue, the defendant's limited participation in the transaction, and the defendant's medical history which indicated he had been severely injured in a motorcycle accident in the 1970's and had suffered two strokes, had Alzheimer's and had diabetes. The defendant incorrectly states that the minimum sentence for each conviction, after enhancement, was 30 years for distribution of marijuana and 20 years for distribution of methadone; the former is correct, but the minimum enhanced sentence for distribution of methadone was 30 years. La. R.S. 40:967(B)(4)(b). The maximum for each is natural life. Defendant argues that 30 years at hard labor probably is more than defendant's natural life, given his medical conditions. Thus, defendant argues, even the minimum sentence would be excessive.
The state argues that the defendant had three prior felonies that could be used as predicate felonies to enhance his sentence, and that the 45-year sentences were within the statutory limits. The state also argues that the trial court has wide discretion to impose sentences within the statutory limits, and that absent a showing of manifest abuse of that discretion, a reviewing court should not set aside a sentence as excessive. The state asserts that the 45-year concurrent sentences are not out of proportion to the seriousness of the offense, that the PSI indicates the defendant's lengthy criminal history, and that the reasons for imposing the sentence were noted by the trial court.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App. 2 Cir. 1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which *837 should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2 Cir. 04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied, XXXX-XXXX (La.9/28/07), 964 So.2d 351; State v. Jones, 33,111 (La. App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, 34,371 (La.App. 2 Cir. 4/4/01), 784 So.2d 714. This court has held that the burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Johnson, supra, 709 So.2d at 676; State v. Henry, 42,416 (La. App. 2 Cir. 9/19/07), 966 So.2d 692; State v. Wade, 36,295 (La.App. 2 Cir. 10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.4/4/03), 840 So.2d 1213.
Furthermore, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason for declaring such a sentence excessive. State v. Johnson, supra; State v. Henry, supra; State v. Wade, supra. Also State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339.
The matters of record show that this defendant has a very long criminal history, even though the trial court only found three predicates available for enhancement. Furthermore, the defendant does not really argue that the trial court failed to articulate the basis for the sentence. Thus, we are left only with the question of whether the concurrent 45-year sentences are grossly out of proportion to the seriousness of the offenses or nothing more than purposeless and needless inflictions of pain and suffering. Given the defendant's fourth felony offender status and his long criminal history, including two prior drug-related offenses, the concurrent sentences do not shock our sense of justice.
Accordingly, this assignment lacks merit.

*838 Defendant's pro se Arguments

As previously noted, the defendant filed a pro se brief containing approximately a dozen complaints or alleged errors in the trial proceedings:
1. Attorney Jack Slaid failed to file on any of the illegalities or the errors, allowing the time limitations for filing to expire.
2. Non arresting officers were allowed to give heard said testimony.
3. C.I. 20-TF. Deanna Self, self confessed drug user, indebted for thousands of dollars in over drawn hot checks, was unable to recall to whom she made a one time drug bust, to whom she arranged this drug deal, how much money she was given, how many grams of drugs she purchased, how much change she was given or by whom she was given it. States she dealt with Paul Robbins when audio and video shows otherwise.
4. Arresting Officer Willie Evens [sic] Busted Narcotics Officer kept out of court and off the stand, so he was unable to be questioned as to facts of the case.
5. Nancy Robbins under cross exam states she bought the methadone that she is shown selling, but it's Paul money and drugs.
6. Nancy Robbins takes a 3 year offer. A.D.A. Sentell forgets to mention to jury members that he has made a reasonable offer of 30 years to Paul Robbins when in fact his charge was only a 10-year max upon commission of Deanna Patton's and Nancy Robbins' prior drug arrangement.
7. Court reporters failure to correctly [transcribe] the exact words of Mr. Sentell where he allegedly said, "We make a Hell of a team us three." Defendant said that Mr. Sentell was speaking of Judge Parker Self, his attorney and himself while he has his hand on my attorney's shoulder "It's good to be working together again."
8. The Court Reporter leaving out the objection that went off record of entrapment issue by order of Judge Parker Self.
9. The illegal search of my Motor Home (Listed as a travel trailer) on officers statements.
10. Officers stated that investigation went on for over 3 months-not true. Disability records light and water records would show and the prior Landlord rent records that Nancy, my children and I did not live at 34 McArthor St. for that length of time. The investigation lasted only 2 months.
11. The most Critical issue being Mr. Sentell's opening statement during Jury Selection that defendant is a drug dealer, a drug Kingpin, a drug pusher.
12. (Verbatim) At closing, a member of a Bank Robbing team "I can live with" "not" being linked by name or any means as being one or having any linking with the likes of our nations most hated and Notorious Al Quida "Transcript Page # 164 at 34. Thats inflammatory and totally out of line in any u.s. courts.

Discussion
Items 1, 2, 11, and 12 are matters to which there was no objection raised at trial or prior to trial. Under La. C. Cr. P. art. 841, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. The defendant can try to raise these matters as part of an ineffective assistance of counsel argument in an application for post-conviction relief; the same is true of item 1.
Items 3 and 5 essentially are sufficiency of the evidence arguments that have no merit. The standard of appellate review for a sufficiency of the evidence claim is *839 whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2 Cir. 8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. In the instant case, the jury heard the testimony of Nancy Robbins and Deanna Patton, but also audio and video of the drug transaction. Giving deference to the jury's determination as to the weight and credibility of testimony and other evidence, we cannot reach a legal conclusion that the evidence was insufficient to convict in this case.
Items 4, 6, 7, 8, 9, and 10 all are matters that do not appear of record or are irrelevant. Nevertheless, items 4, 6, and 10 obviously lack merit because it was not necessary for the state to put the alleged arresting officer on the stand, the jury did not need to know the terms of any plea bargain offered and refused by Robbins, and whether the investigation lasted two versus three months is irrelevant to whether Robbins was guilty of distributing the drugs. Furthermore, items 7, 8, and 9 are matters that applicant may apply for Post-Conviction Relief ("PCR") and request an evidentiary hearing if the claim appears to have merit. Again, any allegations concerning ineffective assistance of counsel in relation to these items also can be raised on PCR.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] This presumption is also a legal fiction. See Heyward D. Armstrong, "Rogers v. Tennessee: An Assault on Legality and Due Process," 81 N.C.L.Rev. 317, 321-22 (December, 2002).
[2] Id., citing LaFave & Scott, Substantive Criminal Law, § 3.1 (1986).
[3] Stanislaw Pomorski, American Common Law and the Principle Nullum Crimen Sine Lege, 25.
[4] Implicit in this pronouncement is the question of whether a "law" is the statute itself or its judicial construction. See, e.g., H.L.A. Hart, The Concept of Law. Clarendon Law Series (1997).
[5] In our opinion we observed that "[a]lthough the jurisprudence prior to State v. Johnson was not uniform, some cases reasoned that R.S. 15:529.1 B prohibited the double-counting only of `predicate offenses' obtained on the same day and allowed the enhancement of multiple `instant offenses.'" See, e.g., State v. Normandin, 32,927 (La.App. 2 Cir. 12/22/99), 750 So.2d 321, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 550; State v. Brooks, 99-478 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, writ denied, XXXX-XXXX (La.5/25/01), 792 So.2d 750.