Judgment rendered January 11, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,897-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

MARLON ANTWAN MILLER                        Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 68,355

Honorable Thomas W. Rogers, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Paula Corley Marx

JOHN F. BELTON                           Counsel for Appellee
District Attorney

LEWIS ALLEN JONES
JAMES G. BUCKLEY
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and MARCOTTE, JJ.

**THOMPSON, J.**

A prison inmate committed battery on two police officers while he was incarcerated. He was offered the opportunity, as part of a plea agreement dealing with numerous pending charges, to enter a plea of guilty to two misdemeanor charges of battery on a police officer, which he refused. At trial, he was convicted by a unanimous jury of two felony counts of battery on a police officer while in prison. The State subsequently initiated habitual offender proceedings against him to enhance his sentencing exposure, and he was adjudicated a fourth felony offender. In accordance with that status, he was sentenced to two consecutive mandatory life sentences at hard labor, without the possibility of parole, probation, or suspension of sentence. He now appeals his conviction and sentence, arguing that the State exhibited prosecutorial vindictiveness, his sentence is unconstitutionally excessive, his charges were impermissibly enhanced, and he received ineffective assistance of counsel. We affirm his conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

Marlon Antwan Miller ("Miller") was an inmate at Lincoln Parish Detention Center, serving his sentences pursuant to a prior guilty plea to the crimes of home invasion, aggravated burglary, car theft, and simple criminal damage to property. On April 14, 2016, during mealtime, Miller slapped a tray of food out of Deputy Robert Wade's ("Deputy Wade") hands. Deputy Wade then pepper sprayed Miller with his JPX gun. Miller grabbed the JPX gun from Deputy Wade, and the two men wrestled to the ground. During the scuffle, Miller threw the JPX gun away and grabbed Deputy Wade's keys. Miller then threw the keys, striking another deputy, Deputy Michael

Caskey ("Deputy Caskey"), in the head. The entire incident was captured on the video surveillance cameras at the detention center.

At trial, Miller testified that he had problems with Deputy Wade prior to this incident. Miller claimed that on the date of the incident, Deputy Wade spit on his tray of food, leading to the altercation. Deputy Wade testified that as a result of the attack, he sustained a black eye and a torn rotator cuff. Deputy Caskey testified that he received a laceration that required one staple where the keys struck him on his head. The video footage of the incident from April 14, 2016, was introduced at trial.

On April 28, 2016, the State filed a bill of information charging Miller with two counts of misdemeanor battery of a police officer. On June 14, 2016, Miller entered a plea of not guilty. The State presented a plea offer of 10 years for five pending charges–the two misdemeanor charges and three other previously pending felony charges, including possession or introduction of contraband into a penal facility, simple escape, and attempted disarming of a police officer. On February 21, 2017, Miller rejected the 10-year package plea offer.

On or about April 19, 2017, the State proposed another plea offer to Miller. This plea offer was for six-month sentences to run concurrently for two misdemeanor charges of battery on a police officer. The State advised Miller that if the offer was rejected, the State would amend the bill of information to allege two felony grade offenses of battery on a police officer while under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or while being detained in any jail, prison, correctional facility, et al., pursuant to La. R.S. 14:34(B)(2). Miller rejected

2

the six-month plea offer.[1]  Thereafter, as promised, the State amended the bill of information to allege the two felony charges, an option which had been available to the prosecution from the outset.

On February 26, 2018, Miller's trial began.  At the conclusion of the trial, a six-person jury rendered a unanimous verdict of guilty as charged on two felony counts of battery on a police officer.  The trial court ordered a presentence investigation report to be prepared for sentencing.  On March 27, 2018, the trial judge sentenced Miller to five years at hard labor, without benefits on each count, to run concurrently with each other, but consecutively with any other sentence.

On March 29, 2018, the State filed a habitual offender bill alleging Miller was a fourth felony offender.  On February 19, 2019, the habitual offender hearing was held.  At the hearing, in addition to the two felony battery on a police officer convictions, the court was presented with evidence of Miller's prior convictions of armed robbery and aggravated burglary, crimes of violence pursuant to La. R.S. 14:2(B).  The trial court took the matter under advisement.  On March 26, 2019, the court found Miller to be a fourth felony offender and sentenced him to two mandatory life sentences at hard labor without benefits; the original five-year concurrent sentences were vacated.  Miller's attorney objected to his adjudication as a fourth felony habitual offender, but did not file a motion to reconsider the sentence.  The State moved to reconsider the sentence and requested that the life sentences be served consecutively.  On March 27,

_____

[1] On February 23, 2018, Miller's defense counsel made an oral motion for sanity evaluation and commission, which was denied by the trial court.

3

2019, the trial court granted the State's request, and ordered Miller's life sentences be served consecutively.

## DISCUSSION

On appeal, Miller asserts three assignments of error:

**First Assignment of Error: The trial court erred in imposing sentences that are unconstitutionally excessive, considering the facts of this case and the apparent escalation of prosecution due to Miller's exercise of his right to trial, rather than acceptance of a plea of guilty to the charges.**

Miller contends that the State's actions escalating the prosecution, including charging him with felonies instead of misdemeanors and filing a habitual offender bill, establish prosecutorial vindictiveness. Miller argues that the charges were unnecessarily escalated when he refused the State's plea offers and opted to proceed to trial, resulting in an unconstitutionally excessive sentence.

*Vindictive Prosecution*

A vindictive prosecution is one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right and thereby violates a defendant's Fifth Amendment right to due process. *United States v. Goodwin,* 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). A defendant has the burden of proving, by a preponderance of the evidence, the affirmative defense of prosecutorial vindictiveness. *State v. Wesley*, 49,438 (La. App. 2 Cir. 2/26/15), 161 So. 3d 1039, *writ not cons.*, 15-1096 (La. 3/14/16), 188 So. 3d 1065; *State v. Sigers,* 45,423 (La. App. 2 Cir. 6/23/10), 42 So.3d 446; *State v. Stewart,* 27,049 (La. App. 2 Cir. 5/10/95), 656 So.2d 677, *writs denied,* 95-1764 and 95-1768 (La.12/8/95), 664 So.2d 420. A defendant may establish a vindictive prosecution either (1) by producing evidence of actual

4

vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness. *U.S. v. Jenkins,* 537 F.3d 1 (1st Cir. 2008), *cert. denied,* 555 U.S. 959, 129 S. Ct. 433, 172 L. Ed. 2d 313 (2008); *United States v. Marrapese,* 826 F.2d 145, 147 (1st Cir. 1987) (citing *Goodwin,* 457 U.S. at 376, 102 S. Ct. 2485, 73 L. Ed. 2d 74). If a defendant raises a presumption of vindictiveness, the prosecutor may rebut the presumption by showing objective reasons for its charges. *Id.*

The events in the case will create a presumption of vindictiveness if, to a reasonable mind, the filing of the habitual offender bill can be explained only by a desire to deter or punish the exercise of legal rights. *Id.; State v. Stewart, supra; U.S. v. Esposito,* 968 F.2d 300 (3d Cir.1992). But where the government's conduct is equally attributable to legitimate reasons, a defendant must prove actual vindictiveness for the presumption to apply. *U.S. v. Esposito, supra.* A mere opportunity for vindictiveness does not suffice. *State v. Stewart, supra; U.S. v. Goodwin, supra; U.S. v. Esposito, supra.*

The discretion to charge a defendant under the habitual offender law lies with the district attorney. *State v. Carter,* 610 So.2d 972, (La. App. 1 Cir. 1992); *see also* La. R.S. 15:529.1. A defendant may be charged as an habitual offender at any time, even after conviction and sentence. La. R.S. 15:529.1(D). Thus, a district attorney has great discretionary power to file a habitual offender bill under La. R.S. 15:529.1(D), just as he has the initial unlimited power to prosecute "whom, when, and how" he chooses. La. C. Cr. P. art. 61; *State v. Dorthey,* 623 So.2d 1276 (La.1993). A prosecutor's use of the habitual offender laws simply provides an ancillary sentencing

factor designed to serve important and legitimate societal purposes. *See State v. Youngblood,* 26,722 (La. App. 2 Cir. 12/22/94), 647 So.2d 1388, *writ denied,* 95-0221 (La.3/17/95), 651 So.2d 277. The use of the habitual offender law alone will not create a presumption of prosecutorial vindictiveness. *State v. Wilson,* 44,586 (La. App. 2 Cir. 10/28/09), 26 So.3d 210, *writ denied,* 2009-2655 (La.1/28/11), 56 So.3d 973. *See also State v. Wesley*, *supra.*

The State argues that it did not demonstrate prosecutorial vindictiveness by enhancing Miller's charges for battery on a police officer from misdemeanors to felonies. We agree. The State did not undertake its actions purely out of an effort to punish Miller for exercising his right to trial. The State had objective reasons for the charges. The record shows that Miller was facing numerous charges – the two misdemeanors, as well as three outstanding felonies, including possession or introduction of contraband into a penal facility, simple escape, and attempted disarming of a police officer. The State offered to resolve all of Miller's pending matters with a 10-year recommended sentence and an agreement to not file a habitual offender bill. Miller chose to reject this offer. Subsequently, the State offered Miller a six-month plea deal on misdemeanor charges, and clearly explained that if he rejected it, the charges would be amended to felony charges. Miller chose to reject this offer, which led to the felony charges and ultimately the habitual offender proceedings. Miller has failed to prove actual vindictiveness by the State.

*Excessive Sentence*

In reviewing claims of excessiveness of mandatory life sentences, courts have recognized that the mandatory life sentences the habitual

offender law requires are presumptively constitutional and should be accorded great deference by the judiciary. *State v. Johnson,* 97-1906 (La. 3/4/09), 709 So. 2d 672; *State v. Wade,* 36,295 (La. App. 2 Cir. 10/23/02), 832 So. 2d 977, *writ denied,* 2002-2875 (La. 4/4/03), 840 So.2d 1213. Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. *State v. Johnson, supra*; *State v. Gay,* 34,371 (La. App. 2 Cir. 4/4/01), 784 So. 2d 714.

This court has held that the burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. *State v. Johnson, supra*; *State v. Robbins,* 43,240 (La. App. 2 Cir. 6/4/08), 986 So. 2d 828, *writ denied,* 2008-1438 (La. 2/20/09), 1 So.3d 494; *State v. Wade, supra.* To do so, the defendant must "clearly and convincingly show that he is exceptional which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *State v. Fisher*, 50,301 (La. App. 2 Cir. 12/30/15), 185 So. 3d 842, 845, *writ denied,* 2016-0228 (La. 2/3/17), 215 So. 3d 687; *State v. Robbins, supra*.

When a defendant fails to make a motion to reconsider sentence, the appellate court's review of the sentence is limited to a bare claim of constitutional excessiveness. *State v. Cooksey*, 53,660 (La. App. 2 Cir. 5/26/21), 316 So.3d 1284, *writ denied*, 21-00901 (La. 10/12/21), 325 So.3d 1074.

Miller was unanimously convicted by a jury on two felony counts of battery on a police officer, which is classified as a crime of violence under

La. R.S. 14:2(B). Further, the prior convictions used for his habitual

offender adjudication include armed robbery and aggravated burglary, which

are also designated by La. R.S. 14:2(B) as crimes of violence. Miller's

criminal history indicates a high likelihood of committing violent crimes in

the future. Further, Miller failed to file a motion to reconsider sentence at

the conclusion of his habitual offender adjudication, so review of his

sentence is limited to a bare claim of constitutional excessiveness. We find

that Miller failed to prove that his mandatory life sentences are

unconstitutionally excessive. This assignment of error is without merit.

**Second Assignment of Error: The State erred in prosecuting Miller as a fourth felony offender for two counts of the felony offense of battery of a police officer, as application of La. R.S. 15:529.1 in this instance amounts to a prohibited double enhancement of Miller's sentences.**

Miller argues that the habitual offender enhancement of his

convictions for battery of a police officer constitutes an impermissible

double enhancement. Miller contends that the enhancement of his charges

from misdemeanors to felonies precludes further enhancement under the

habitual offender law.

This Court has held that due to a defendant's choice to commit the

felony of battery upon correctional officers while being held in a

correctional facility, his subsequent conviction as a habitual offender would

stand. *State v. Johnson*, 33,791 (La. App. 2 Cir. 10/20/00), 771 So. 2d 798.[2]

Though his offenses were originally billed as misdemeanors, Miller was

ultimately convicted of felonies, following his choice to reject the State's

plea offer. There is no statutory restriction on the type of felony which may

---

[2]     The Louisiana Supreme Court reversed *Johnson, supra*, on other grounds, but did not address the enhancement issue presented in this case. *See State v. Johnson,* 01-0006 (La. 5/31/02), 823 So. 2d 917.

8

be enhanced by the habitual offender law. Additionally, there is no express prohibition against the application of habitual offender laws in the text of La. R.S. 14:34.2(B)(2) regarding battery of a police officer while under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or while being detained in any jail, prison, or correctional facility. As such, the habitual offender enhancement of Miller's felony convictions for battery of a police officer do not constitute an impermissible double enhancement. This assignment of error is without merit.

**Third Assignment of Error: Miller received ineffective assistance of counsel, because defense counsel failed to file a motion to reconsider sentence, failed to file a written response and objections to the habitual offender bill of information, and failed to file a motion to quash the habitual offender bill of information.**

Miller argues the failures of trial counsel to file motions to preserve certain issues for review on appeal constitutes ineffective assistance of counsel. Miller contends that trial counsel's failure to file a motion to quash the habitual offender bill, a response or objection to the habitual offender bill, and a motion to reconsider the sentence establishes a reasonable probability that the court would not have adjudicated him a fourth felony offender, and the sentences imposed would have been significantly less.

As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. *State v. Smith*, 49,356 (La. App. 2 Cir. 11/19/14), 152 So.3d 218, *writ denied*, 14-2695 (La. 10/23/15), 179 So. 3d 597.

9

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. *State v. Wry*, 591 So.2d 774 (La. App. 2 Cir. 1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

First, to establish that his attorney was ineffective, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel's deficient performance prejudiced his defense and that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *Strickland, supra*; *State v. Reese*, 49,849 (La. App. 2 Cir. 5/20/15), 166 So.3d 1175, *writ denied*, 15-1236 (La. 6/3/16), 192 So. 3d 760.

A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *Smith, supra*. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. *Strickland, supra*; *Reese, supra*. The mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. *State v. Brooks*, 52,334 (La. App. 2 Cir. 11/14/18), 260 So. 3d 713, 715, *writ denied*, 18-2031 (La. 4/15/19), 267 So. 3d 1121.

Based on the record before us, Miller cannot show that his trial counsel's failure to file any of the motions mentioned in his brief would have resulted in a different outcome in this case. Miller has not presented any evidence that he would not have been found a fourth felony offender had counsel filed a motion to quash the habitual offender bill, or an objection or a response to the bill. Further, though Miller did not file his own motion to reconsider sentence, he did have the opportunity to participate in a contradictory hearing held for consideration of the State's motion to reconsider sentence. Ultimately, his life sentences are mandated by our habitual offender law, because he was convicted of two felonies for battery on a police officer, and the State subsequently proved that he was a fourth felony habitual offender. Miller has failed to identify any action or omission by his trial counsel that would have impacted the outcome of his case. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm Marlon Antwon Miller's conviction and sentence.

**AFFIRMED.**